## KELLY *v.* KOSUGA.

No. 267. Argued January 22, 1959.—Decided February 24, 1959.

*Joseph W. Louisell* argued the cause for petitioner. With him on the brief was *Ivan E. Barris.*

*Lee A. Freeman* argued the cause for respondent. With him on the brief were *Anthony Bradley Eben, Brainerd Currie* and *Philip B. Kurland.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The respondent sued the petitioner in the District Court for the Northern District of Illinois for failing to complete payment of the purchase price of 50 cars of onions which the respondent had sold to the petitioner in December 1955. Jurisdiction was based on diversity of citizenship. The petitioner interposed the defense that the sale was made pursuant to and as an indivisible part of an agreement which violated § 1 of the Sherman Antitrust Act, 26 Stat. 209, as amended, 15 U. S. C. § 1. A motion was made to strike this defense and therefore the facts underlying it must be taken to be those set up in the petitioner's answer. Petitioner and respondent were both

engaged in the marketing of onions. Petitioner, who was
a grower of onions, admitted that he bought the onions
from the respondent. But he alleged that the respondent
and one Sam Siegel had represented to him and to other
onion growers that they were the owners of substantial
amounts of onions in storage, controlling 600 cars in
the Chicago area and 400 more elsewhere throughout the
country; that respondent and Siegel further informed
the petitioner and other growers, at meetings called
for the purpose in November and December 1955, that un-
less the growers purchased a large quantity of these
onions, the respondent and Siegel would deliver them on
the futures exchange for the purpose of depressing the
futures price and the cash market price of onions. The
petitioner and the other growers, who usually sold through
trade channels, were fearful that this would cause them
considerable loss. It was finally agreed by the petitioner
and other growers that they would purchase 287 of the 600
cars of onions stored in the Chicago area, and the respond-
ent and Siegel agreed not to deliver any onions on the
futures market for the remainder of the current trading
season. The petitioner and the other purchasers them-
selves agreed not to deliver any of the onions purchased
from respondent and Siegel on the futures market for the
remainder of the season; this was "for the purpose of
creating a false and fictitious market condition," and "to
fix the price of onions and limit the amount of onions sold
in the State of Illinois." The District Court granted
respondent's motion and struck the defense as insufficient
in law.[1]

---

[1] Petitioner also interposed defenses of illegality under the Com-
modity Exchange Act, § 9, 42 Stat. 1003, as amended, 7 U. S. C. § 13,
and the Illinois Antitrust Act, Smith-Hurd Illinois Ann. Stat., c. 38,
§§ 569, 573, 574, and a counterclaim alleging respondent's breach of
the nondelivery agreement. These issues were decided adversely to
the petitioner below and are not preserved by him here.

The District Court then found, on the undisputed facts, that petitioner had in fact purchased the 50 cars of onions from the respondent, at an agreed price of $960 per car, plus storage charges incurred after sale; that petitioner had withdrawn 13 cars of the onions from the designated storage places after the sale, but had not withdrawn the remainder; that while petitioner had made some payments on account of the sale, he had come into default on them; and that, when the onions began to show signs of deterioration, the respondent properly, after repudiation of the purchase by the petitioner, withdrew the remaining cars from storage and sold them for petitioner's account. The District Court entered summary judgment for the unpaid purchase price and storage charges, less the amounts obtained on the sale by respondent, the market price having declined in the interim. The Court of Appeals for the Seventh Circuit affirmed. 257 F. 2d 48. We granted certiorari to consider the availability of the petitioner's pleaded defense of illegality under the Sherman Act to this action to enforce the terms of a sale made under state law. 358 U. S. 811.

As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act [2] has not met with much favor in this Court. This has been notably the case where the plea has been made by a purchaser in an action to recover from him the agreed price of goods sold. In *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, one who had purchased merchandise from a firm allegedly a combination in restraint of trade was not allowed to set up that fact as a defense to an action for the purchase price. In *D. R. Wilder Mfg. Co.* v. *Corn Products Refining Co.*, 236 U. S. 165, Corn Products sold merchandise to Wilder with a standing offer, of which the

---

[2] Without deciding the point, we shall assume that the petitioner's allegations duly charged a violation of the Sherman Act.

latter apparently had sought to take some advantage, to give Wilder a rebate if it bought exclusively from it. Again, in an action by the seller, Corn Products, to recover the agreed price, the purchaser, Wilder, was denied any defense of illegality based on the Sherman Act. The Court observed that the Sherman Act's express remedies could not be added to judicially by including the avoidance of private contracts as a sanction. *Id.*, at 174–175. Cf. *Bruce's Juices, Inc.,* v. *American Can Co.,* 330 U. S. 743, 755. See *A. B. Small Co.* v. *Lamborn & Co.,* 267 U. S. 248, 252, generally to the same effect. Obviously, state law governs in general the rights and duties of sellers and purchasers of goods, and, while the effect of illegality under a federal statute is a matter of federal law, *Sola Electric Co.* v. *Jefferson Electric Co.,* 317 U. S. 173, 176–177, even in diversity actions in the federal courts after *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, still the federal courts should not be quick to create a policy of nonenforcement of contracts beyond that which is clearly the requirement of the Sherman Act.

The petitioner recognizes the import of the holdings in *Connolly, Wilder* and *Small,* but he argues that they involve situations where a person not party to any unlawful agreement sought to defend against the action on the grounds of the seller's unlawful acts; where the purchaser is party to the unlawful agreement and the agreement bears some relation to the suit, the petitioner claims he is not to be held to the purchase price. The distinction asserted is, to say the least, on its face paradoxical; and the petitioner quotes from this Court's opinion in *McMullen* v. *Hoffman,* 174 U. S. 639, 669, which dealt with the plea of illegality in another context: "It has been often stated in similar cases that the defence is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions."

Petitioner evidently is willing to take the bitter as well as the sweet from this passage. If the defense of illegality is to be allowed as a collateral method of enforcement of the antitrust laws, as the breadth of the petitioner's argument suggests, it must be said that his theory creates a very strange class of private attorneys general.

In any event, an analysis of the narrow scope in which the defense is allowed in respect of the Sherman Act indicates that the principle of distinction is not what the petitioner claims it to be. The leading case here in which the defense was allowed is *Continental Wall Paper Co.* v. *Louis Voight & Sons Co.*, 212 U. S. 227, much relied on by petitioner. There the Voight company had made purchases from Continental, a corporation which existed only as a selling agent for numerous wallpaper companies doing business as a pool and selling at prices, alleged to be excessive and unreasonable, fixed through the pool agreement. The Court was of opinion that to give judgment for the excessive purchase price so fixed in favor of such a vendor would be to make the courts a party to the carrying out of one of the very restraints forbidden by the Sherman Act. 212 U. S., at 261. Any thought that the Court might have been proceeding on broader grounds was shortly afterwards laid to rest by the unanimous opinion of the Court in the *Wilder* case. 236 U. S., at 177. The scope of the defense of illegality under the Sherman Act goes no further. While enforcement of a contract between wrongdoers may more frequently present such a situation, cf. *Lyons* v. *Westinghouse Electric Corp.*, 222 F. 2d 184, 188, the character of the parties is not in itself determinative. Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, "of preventing people from getting other people's property for nothing when they purport to be

buying it." *Continental Wall Paper Co. v. Louis Voight & Sons Co., supra,* at 271 (dissenting opinion). Supplying a sanction for the violation of the Act, not in terms provided and capricious in its operation, cf. *Bruce's Juices, Inc., v. American Can Co., supra,* at 753–754, is avoided by treating the defense as so confined.

Accordingly, while the nondelivery agreement between the parties could not be enforced by a court, if its unlawful character under the Sherman Act be assumed, it can hardly be said to enforce a violation of the Act to give legal effect to a completed sale of onions at a fair price. And while analysis in terms of "divisibility" or some other verbal formula may well be circular, see 6 Corbin, Contracts, § 1520, in any event, where, as here, a lawful sale for a fair consideration constitutes an intelligible economic transaction in itself, we do not think it inappropriate or violative of the intent of the parties to give it effect even though it furnished the occasion for a restrictive agreement of the sort here in question. Cf. *Cincinnati, Portsmouth, Big Sandy & Pomeroy Packet Co. v. Bay,* 200 U. S. 179, 185.

*Affirmed.*

Mr. Justice Black and Mr. Justice Douglas dissent.