**GENERAL FREIGHT TRANSPORT COMPANY, Inc., Plaintiff-Appellee,**

v.

**RISS & COMPANY, Inc., Defendant-Appellant.**

**GENERAL FREIGHT TRANSPORT COMPANY, Inc., Plaintiff- Cross-Appellant,**

v.

**RISS & COMPANY, Inc., Defendant-Cross-Appellee.**

Nos. 12986, 12987.

United States Court of Appeals
Seventh Circuit.

Dec. 9, 1960.

John J. Cassidy, Jr., Frank J. McAdams, Jr., Herman Herson, Harold E. Marks, Chicago, Ill., for General Freight Transport Co., Inc., plaintiff-appellee cross-appellant.

Lee A. Freeman, Eugene L. Cohn, Bernard G. Colby, Chicago, Ill., for Riss & Company, Inc., defendant-appellant cross-appellee.

Before SCHNACKENBERG and KNOCH, Circuit Judges, and PLATT, District Judge.

PLATT, District Judge.

General Freight Transport, Inc., plaintiff, filed an amended complaint in three counts against the defendant, Riss & Company, Inc. The district court, after trial, entered findings of fact, conclusions of law and final judgment in favor of the plaintiff for $11,011.55 on Count II of the complaint, and dismissed Counts I and III for want of equity. Riss & Company has only appealed from the judgment on Count II and General Freight has cross-appealed from this judgment.

Count II of the amended complaint alleges in substance that General Freight operated for Riss under an oral "Provider Agreement" which was modified at a meeting between plaintiff and defendant in September, 1948; that from October 1, 1948 through September, 1949, General Freight and its officers were nominal employees of the defendant, Riss & Company, as operating managers in charge and control of territories and routes allocated to General Freight and known as "Division I"; that at this September meeting, to comply with the order of the Interstate Commerce Commission, a new agreement was made between General Freight and Riss whereby General Freight continued to advertise and promote the business of the defendant in its assigned territory in the name of Riss & Company, and furnished the necessary motor vehicles and personnel for handling of transportation of property; that under the new oral agreement General Freight was to receive 83% of the gross revenue received from the operation of "Division I"; that General Freight complied with this agreement but Riss & Company failed to pay the amount due under the new agreement and wrongfully withheld from General Freight the amount so due.

Riss & Company, by its answer, in substance denied the agreement with the plaintiff, and denied it was indebted to General Freight and alleged that the new agreement was with Hall and Stein, as individuals; that any agreement between plaintiff and defendant was against public policy, in violation of orders of the

Interstate Commerce Commission and was illegal and unenforceable.

The proof disclosed that the defendant was a common carrier of property in various states and operated under authority of certificates of public convenience and necessity granted by Interstate Commerce Commission. In 1945 Jack Hall and Joseph Stein formed a partnership, doing business as General Freight Transport Company, and continued to operate under an oral agreement known as "Provider Agreement" with Riss. The territory to be covered by the plaintiff under the oral agreement was Chicago and East. The "provider" was to furnish personnel and equipment for the transporation of freight and solicit contracts, but all business was to be transacted in the name of Riss & Company on the basis of its tariffs established by the Interstate Commerce Commission. All amounts received for the transportation of property were to be remitted to Riss & Company. In March, 1947, Stein and Hall organized the plaintiff-corporation and all assets of the partnership were transferred to the corporation, and the corporation assumed all liability of the partnership. The "provider" received its compensation from gross revenues collected in an amount ranging from a minimum of 82½ to 87½%. Riss kept the balance of the amount received for transportation of property to reimburse it for administrative and general overhead costs, and to provide a profit of 5% of the gross revenues.

On June 10, 1948, the Interstate Commerce Commission, after a hearing, entered an order finding that Riss was not acting as a common carrier within the meaning of § 203(a) (14) of the Interstate Commerce Act, as amended § 303 (a) (14), 49 U.S.C.A. In its conclusion the Interstate Commerce Commission stated:

"It may be said, in effect, that Riss merely holds the operating rights under which the providers and others furnish and conduct the service, and by any realistic test Riss is a mere aid in carrying on the carrier operations of the providers. In such situations, we are entitled to look through the form and to the substance of the matter, and concern ourselves with realities."

Riss, by operating under the division plan, attempted to comply with the directions of the Interstate Commerce Commission which required it to abolish the provider system. On July 30, 1948, Riss filed a report with the Commission and proposed that the provider agreements would be canceled and a division plan of operation would be put into effect. The plan proposed in the report provided in part:

"Riss and Company, Inc. will conduct operations in connection with all certificated and claimed routes. * * * The operating territory of Riss and Company, Inc. has been divided into three divisions. * * * District Managers will be direct employees of Riss and Company, Inc. and on the direct payroll of Riss and Company, Inc. District Managers will be paid a fixed sum as salary * * * without regard to whether the operations conducted in their districts resulted in a profit to Riss and Company, Inc. * * * The district manager will in no case be a corporation or other organization but will be an individual employed by Riss and Company, Inc. The provider corporations may or may not continue in existence. In some cases where the former provider owns equipment, it may be necessary for Riss and Company, Inc. to lease the equipment for use in its operations. * * * Riss and Company will provide an incentive element in compensation for executive personnel through bonuses. (sic) The amount of the bonuses payable to any employee and time of its payment will be determined by the officers of Riss and Company." If a profit has resulted the amount of bonuses shall be determined by the manner in which the executive employee conducted the business.

The "Division Plan" was in operation by October 1, 1948, pursuant to an oral agreement entered into at a meeting held in September, 1948. There was a dispute in the testimony as to whether General Freight had a special agreement whereby it was to continue on a modified provider plan or divisional basis, or whether the contract after October 1, 1948 was between Riss & Company, and Hall and Stein. Stein died in November, 1948.

Riss issued a forth quarter summary statement which reads as follows:

"Riss and Company, Inc.
9th and Burlington
N. Kansas City, Mo.

Summary — Fourth Quarter — 1948

TO: Division #1

*Revenue*

| | | |
|---|---|---|
| October | $119,406.38 | |
| November | 124,470.05 | |
| December | 124,192.60 | |
| Total | $368,069.03 | |

Less interline portion at 35% of unreported bills 1,017.31

$367,051.72
83%

Net Revenue $304,652.93

*Expenses*

| | | |
|---|---|---|
| October | $ 75,355.92 | |
| November | 105,979.17 | |
| December | 92,923.43 | |

| | |
|---|---|
| Total Expenses | $274,258.52 |
| Operating Profit | $ 30,394.41 |
| Less uncollected bills | 7,052.63 |
| Balance at December 31, 1948 | $ 23,341.78" |

Two checks of Riss & Company for $5,000.00 each were introduced in evidence, one was dated January 11, 1949, payable to General Freight Transport Company, Inc., and the other to General Freight Transportation, dated February 16, 1949. A third check by Riss & Company was introduced in evidence which was made payable to Jack J. Hall, dated May 12, 1949, in the amount of $3,723.45. The check accompanied the following letter:

"Jack Hall
Division I May 12, 1949
Chicago, Illinois Kansas City G O

"Dear Jack:
"Enclosed is check No. 1842 which covers your bonus though (*sic*) March of this year.
"This final payment on bonus thruogh (*sic*) March 1949 amounts to $4388.29 and after payroll tax deductions of $664.84 the attached check amounts to $3723.45.
"Yours truly
Riss & Co., Inc.
S. W. Bell."

Plaintiff contends that the oral agreement between General Freight and Riss

continued through June, 1949. The defendant contends that the agreement with General Freight terminated October 1, 1948 and from that time on the defendant's contract was with Stein and Hall, and later with Hall, and not with General Freight Transport Company. There is also a dispute between the parties as to the percentage of gross revenues after deductions that were to be paid under the oral agreement after October 1, 1948.

Defendant contends that the district court should have dismissed Count II for the reasons that:

"1. Any amount due the plaintiff corporation or Jack Hall individually as a bonus under the division plan of operation was settled by the payment of the check of May 12, 1949 which was the 'final payment on bonus' from October 1, 1948 through March 1949. This check was accepted by and deposited in Hall's account. Such action constituted an accord and satisfaction which bars further recovery." (Of course, if the contract was with Stein and Hall, and later Hall there could be no recovery here since the party plaintiff is General Freight Transport Company, Inc.)

"2. The bonus formula was based upon an allocation of 80% of gross revenues throughout the nine months period during the division plan of operations.

"3. The plaintiff corporation had no connection with the division plan of operations and has not established any legal or equitable basis of recovery of alleged bonus due to the individual division managers under that plan.

"4. The judgment and decree in favor of the plaintiff corporation improperly lends the court's aid to the direct enforcement of an illegal arrangement contrary to public policy and the public interest."

General Freight on its cross-appeal contends that:

"1. The Trial Court properly found that the special agreement was between the parties to this suit and called for payment of compensation to plaintiff at the rate of 83% of gross revenues less deductions; but the Court erred in finding that the agreement terminated after three months, in that both parties have admitted performance under the agreement from October 1, 1948 to June 30, 1949.

"2. * * * the evidence supports the Trial Court's finding that the contract provided for payment to General Freight of compensation equal to no less than 83% of gross revenues after deductions.

"3. * * * the evidence supports the Court's finding that the parties to the contract were General Freight Transport Co., Inc., and Riss & Company."

4. There was no "accord and satisfaction" between the parties as claimed by the defendant, Riss & Company.

5. "[D]efendant can [not] defeat plaintiff's rights to the compensation it earned in fully performing its part of an agreement entered into with defendant's president where the agreement was not intrinsically illegal, fully protected the interests of the public, and was not illegal as to its object or method of performance."

The district court by its findings determined that there was a contract between General Freight Transport Company, Inc. and the defendant Riss. It specifically found as follows:

"9. The court Further Finds from all of the evidence that the agreement between General Freight Transport Co., plaintiff, and Riss & Company, defendant, was terminated by the parties as of December 31, 1948, and that a new agreement was thereafter entered into in conformity with the order of the Inter-

state Commerce Commission of June 10, 1948; that Jack J. Hall was to receive a bonus on the basis of 80 .per cent instead of 83 per cent and that he did acquiesce in said agreement cannot be controverted by virtue of his acceptance, as personal income, of the aforesaid check for $3,-723.45, together with the benefits of withholding United States income taxes and old age benefits paid on his behalf.

"10. The plaintiff corporation was paid by the defendant for the months of October, November and December, 1948, on the basis of 80 per cent rather than 83 per cent pursuant to the agreement. It was then and is now entitled to have its compensation computed upon the basis of 83 per cent of $367,051.72, being the gross income for the said three months, less $1,017.31 in interline items, and before deducting expenses in the amount of $274,258.52 instead of upon the basis of 80 per cent of said $367,051.72. Inasmuch as that was not then done, and since equity requires that which should be done to be done, then it should

now be done and plaintiff is, therefore, now entitled to the additional sum of three (3) per cent of $367,-051.72, or a total sum of $11,011.55; that said sum has not, nor has any part thereof been paid to plaintiff by defendant and it still remains owing and due."

Assuming that the court's findings in paragraph 9 were supported by substantial evidence we are unable to find any evidence which would support a finding and final order that there was $11,011.55 due General Freight. The fourth quarter summary (heretofore set out) shows a total revenue or gross income of $368,069.03, less interline portion at 35% of unreported bills, $1,017.31, leaving a balance of gross revenue in the amount of $367,051.72. There is no evidence that the defendant paid General Freight 80% of this figure, less expenses. Using the figures set forth on the fourth quarter summary for 1948 the balance due General Freight December 31, 1948, at 80% would be $12,330.22, of which $10,000.00 was paid, leaving a balance of $2,330.22. Note illustration of this summary on the basis of 80%.

*Revenue*

| | | |
|---|---|---|
| | October | $119,406.38 |
| | November | 124,470.05 |
| | December | 124,192.60 |
| | Total | 368,069.03 |
| Less interline portion at 35% of unreported bills | | 1,017.31 |
| | | $367,051.72 |
| | | 80% |
| | Net Revenue | $293,641.37 |

*Expenses*

| | | |
|---|---|---|
| | October | $ 75,355.92 |
| | November | 105,979.17 |
| | December | 92,923.43 |
| | Total Expenses | $274,258.52 |
| | Operating Profit | 19,382.85 |
| Less uncollected bills | | 7,052.63 |
| | | $ 12,330.22 |

If the percentage of 83% is used in figuring the balance due for the period from October 1, 1948 through December 31, 1948, as shown on the fourth quarter summary, the amount would be $23,341.78, less $10,000.00, the two checks of $5,000.00 each, leaves a balance due of $13,341.77. General Freight would be paid in full as of March 31, 1949 on an 80% basis if all three checks were credited to General Freight's account.

Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A. demands that the findings of the district court shall be sufficiently clear to enable the reviewing court to ascertain the basis for the trial court's final judgment. In re Rockford Baseball Club, 7 Cir., 1953, 201 F.2d 685; Maher v. Hendrickson, 7 Cir., 1951, 188 F.2d 700. In the latter case this court said at page 702:

"The ultimate test as to the propriety of findings is whether they are sufficiently comprehensive to provide a basis for decision and supported by the evidence."

■■ In the instant case the finding of $11,011.55 due the plaintiff is neither sufficiently comprehensive, nor supported by the evidence. This court is not called upon to place itself in the shoes of the trial court, weigh the evidence, draw reasonable inferences, make findings, and determine the result. Zeddies v. C. I. R., 7 Cir., 1959, 264 F.2d 120.

■ We do not quarrel with the legal conclusion of the district court that if Riss & Company and General Freight entered into an oral contract in good faith, which was in substantial compliance with the order of the Interstate Commerce Commission, and General Freight performed the services under the contract, it is no bar to recovery by the plaintiff that the contract was not in strict accordance with the order of the Interstate Commerce Commission. Kosuga v. Kelly, 7 Cir., 1958, 257 F.2d 48, affirmed 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475. The Supreme Court there stated at page 520 of 358 U.S. at page 432 of 79 S.Ct.:

"Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawfully by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' Continental Wall Paper Co. v. Louis Voight & Sons Co., supra [212 U.S. 227], at [page] 271 [29 S.Ct. 280, 53 L.Ed. 486] (dissenting opinion). Supplying a sanction for the violation of the Act, not in terms provided and capricious in its operation, cf. Bruce's Juices, Inc. v. American Can Co., supra [330 U.S. 743], at [pages] 753–754 [67 S.Ct. 1015, 91 L.Ed. 1219], is avoided by treating the defense as so confined."

For the reasons stated the judgment in favor of plaintiff is reversed, and the cause is remanded to the district court to make appropriate findings of fact based upon the evidence now in the record, or, if the district court determines that the present record is insufficient for appropriate findings of fact further evidence may be taken, and provided, further, that the district court may in lieu of making further findings of fact, grant a new trial.

Reversed and remanded.