Birdie Amsterdam, J.
Plaintiffs move for dismissal of the fourth defense and counterclaim for insufficiency. They allege that plaintiff International and the defendant agreed respectively to sell and buy Revlon products for export to and sale *773 only in Japan, Korea and Pakistan, and further, should the defendant sell any of such products outside those countries or within the continental limits of the United States and its possessions, plaintiff International, in addition to all other legal and equitable rights and remedies, would be entitled to liquidated damages in a sum equal to 50% of the gross sales price of every sale in violation of the agreement. That agreement was made by the defendant, it is alleged, with knowledge of the facts that to insure extensive sales and goodwill for the products and the name “Revlon” among dealers, distributors and the consuming public, and as part of the method of distribution, plaintiff Revlon sells certain of its products in the continental United States only to franchised retail dealers and certain of its products only to wholesale distributors for resale to beauty schools and salons, and certain of its products to other wholesalers; in furtherance of the method of distribution Revlon appointed plaintiff International its foreign distributor to sell all Revlon products throughout the world except continental United States, granting to International the right to enter into agreements with others, granting to them in turn the right to distribute and sell Revlon products in foreign countries, but not within the continental United States. And it was in pursuance of such plan of distribution that International engaged in the agreement in suit with the defendant.
It is alleged further that defendant wrongfully and in breach of “ the aforesaid agreements ” diverted and sold Revlon products acquired from International, and intended for resale in Japan, Korea and Pakistan only, to distributors and retail dealers within the continental United States, for the purpose of resale and distribution there.
In the fourth defense and counterclaim, it is alleged, upon information and belief, that plaintiff Revlon, Inc., entered into contracts, agreements, understandings and arrangements with plaintiff International and with other distributors of Revlon products by which distributors are restricted to selling in certain territories or to selling only to certain retail dealers, or to selling only certain Revlon products, and provide also for penalties or liquidated damage in the event of a breach of such agreements; such agreements were made pursuant to a conspiracy between plaintiff International and certain distributors of Revlon products to restrain trade and commerce among the States and to fix and control the market price of Revlon products. In furtherance of the conspiracy plaintiffs refused to sell Revlon products to the defendant, and have so refused since February, 1960. Defendant contends that the conspiracy con *774 stitutes a violation of the antitrust laws of the United States and of the various States, and that the agreement between plaintiff International and the defendant is contrary to law and public policy and is null and void.
Plaintiff contends that the agreement in suit is itself valid and is not tainted with illegality, and that it is no defense that matters outside the agreement consisting of agreements by plaintiffs with third parties constitute an invalid restraint in violation of antitrust laws, and further, that affirmative relief for the recovery of triple damage under the Federal antitrust laws (see U. S. Code, tit. 15, §§ 4,15) is not available in the State courts. Defendant consents to dismissal of the counterclaim without prejudice.
Plaintiffs do not sue for the purchase price of goods sold and accepted. Rather, they sue to recover what the defendant denominates the penalty by reason of defendant’s disposal of the goods contrary to its agreement with plaintiff International. Accordingly, as defendant urges, what plaintiffs seek to do is to enforce the agreement in extension of a system of distributorship which the defendant alleges is unlawful. Plaintiffs do not urge insufficiency of the defense in that it is not well stated, but rather, like the counterclaim, it is not available, and that is the question presented for determination.
Plaintiffs make no affirmative claim upon the basis of any statute, nor do they seek the recovery of the purchase price which, when constituting a fair consideration, must in all events be paid. Moreover, the agreement in suit made between plaintiff International and the defendant is in itself valid. In short, this action does not concern itself with the fairness of the bargain made as to performance by the parties in the sale and payment of merchandise delivered, but rather with the enforcement of the agreement to obtain the advantages of the alleged distribution system.
In Kelly v. Kosuga (358 U. S. 516), the petitioner, a grower, purchased onions from the respondent, alleging that the latter, together with another, had represented to the petitioner and to other onion growers that the respondent and his confederate were the owners of substantial amounts of onions in storage which they threatened to deliver on the futures exchange for the purpose of depressing the futures price and the cash market price of onions unless the growers purchased a large quantity thereof. The growers, usually selling through trade channels, and fearful of considerable loss, agreed to purchase a quantity of the onions, and the respondent and his confederate agreed not to deliver any onions on the futures market for the remainder *775 of the then current trading season, the growers agreeing not to deliver any of the onions thus purchased on the futures market for the remainder of the season for the purpose of creating a false and fictitious market condition, and to fix the price of onions and limit the amount of onions sold. The foregoing allegations were set forth in a defense which the District Court on the respondent’s motion struck out as insufficient in law. The suit was by the respondent and was based upon the petitioner’s failure to complete payment of the purchase price on some of the onions delivered. Apparently, in addition to the failure to pay, there was also nondelivery in part of the onions contracted to be sold. The petitioner there relied on McMullen v. Hoffman (174 U. S. 639), where the court stated, at page 669: “ It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions.” The court in Kelly at page 520 then stated:
‘ ‘ If the defense of illegality is to be allowed as a collateral method of enforcement of the antitrust laws, as the breadth of the petitioner’s argument suggests, it must be said that his theory creates a very strange class of private attorneys general.
‘ ‘ In any event, an analysis of the narrow scope in which the defense is allowed in respect of the Sherman Act indicates that the principle of distinction is not what the petitioner claims it to be.”
The court then referred to the leading case in Avhich the defense was allowed, Continental Wall Paper Co. v. Louis Voight & Sons Co. (212 U. S. 227). The Voight company had made purchases from Continental. The latter existed as a selling-agent for numerous wallpaper companies doing business as a pool, selling at prices, alleged to be excessive and unreasonable, fixed through the pool agreement. It was there held that to give judgment for the excessive purchase price in favor of the vendor would constitute the courts a party to carrying out one of the restraints forbidden by the Sherman Act. The court in Kelly at pages 520 and 521 then stated:
“ The scope of the defense of illegality under the Sherman Act goes no further. While enforcement of a contract between wrongdoers may more frequently present such a situation, cf. Lyons v. Westinghouse Electric Corp., 222 F. 2d 184, 188, the character of the parties is not in itself determinative. Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice *776 Holmes put it, ‘ of preventing people from getting other people’s property for nothing when they purport to be buying it.’ Continental Wall Paper Co. v. Louis Voight & Sons Co., supra, at 271 (dissenting opinion). Supplying a sanction for the violation of the Act, not in terms provided and capricious in its operation, cf. Bruce’s Juices, Inc., v. American Can Co., supra, at 753-754, is avoided by treating the defense as so confined.
‘ ‘ Accordingly, while the nondelivery agreement between the parties could not be enforced by a court, if its unlawful character under the Sherman Act be assumed, it can hardly be said to enforce a violation of the Act to give legal effect to a completed sale of onions at a fair price. And while analysis in terms of ‘ divisibility ’ or some other verbal formula may well be circular, see 6 Corbin, Contracts, § 1520, in any event, where, as here, a lawful sale for a fair consideration constitutes an intelligible economic transaction in itself, we do not think it inappropriate or violative of the intent of the parties to give it effect even though it furnished the occasion for a restrictive agreement of the sort here in question. Cf. Cincinnati, Portsmouth, Big Sandy & Pomeroy Packet Co. v. Bay, 200 U. S. 179, 185.”
Accordingly, the defense must be considered in this view, that the defendant is not endeavoring to take advantage with respect to the contract insofar as it has been performed by the delivery of merchandise, but rather the defense is intended to prevent the plaintiffs from taking advantage of the contract in suit in that, as contended, thereby the plaintiff is taking advantage of the larger scheme of which the agreement in suit was a part, to exploit a plan of distribution which the defendant says is illegal. It may be noted that plaintiffs have alleged that the defendant diverted goods not in violation of the agreement between plaintiff International and the defendant, but rather “ in breach of the aforesaid agreements ”, which must be taken to refer to the additional agreements set out in the complaint and constituting the plan of distribution. The defense must be permitted to stand, and the motion is denied.