CÁMARA INSULAR DE COMERCIANTES MAYORISTAS, Plaintiff and Appellee, *v.* F. SANTIAGO LAVANDERO ET AL., Defendants and Appellants.

No. 12365. Decided September 29, 1961.

*Rodríguez Ema & Rodríguez Ramón* and *Antonio José Amadeo* for appellee. *Mariano Acosta Velarde* and *Daniel Pellón Lafuente* for appellants. *P. J. Santiago Lavandero* for appellant F. Santiago Lavandero.

Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, and Mr. Justice Blanco Lugo and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Some time in March 1950, the domestic corporation Sucrs. de Lavandero, Inc. owed the sum of $22,232.82 to several

commercial firms of this city. In view of the fact that its financial condition did not permit it to pay on their due date the obligations contracted, Frank Santiago Lavandero, president of that corporation, wrote to the adjuster of the Cámara Insular de Comerciantes Mayoristas proposing a plan for the payment of those debts. In that connection, he stated that he was willing to pay the full amount thereof *"through that entity"* in monthly instalments of not less than $500, and to secure the payment by a mortgage on the equipment and furniture of the business. He also proposed that "the expenses and fees of the Cámara Insular de Comerciantes Mayoristas shall be on our account (of the corporation) in order that you (the creditors) may collect your money in full." This proposal was accepted, and on the following July 18 the corporation issued a promissory note in favor of the Cámara and constituted a chattel mortgage which was duly recorded in the Registry of Property of Bayamón.

On February 9, 1951, the Cámara cancelled the promissory note issued by the corporation and also the mortgage constituted as already stated, upon payment in full of the total amount, "by means of other guarantees which today have substituted the present obligation." The corporation was thus able to dispose freely of the mortgaged chattels. It is well to note that Santiago Lavandero procured the cancellation referred to by proposing that the corporation's unpaid balance be reduced to 70 per cent only of the outstanding principal, out of which he paid part in cash and issued an obligation for the sum of $7,239.64 [1] in favor of the Cámara

---

[1] The said obligation, copied verbatim, reads as follows:

"(PROMISSORY NOTE)

"For $7,239.64 Matures: Every month

"WE OWE AND PROMISE TO PAY solidarily to the CÁMARA INSULAR DE COMERCIANTES MAYORISTAS, or to its order, at its domicile in San Juan, Puerto Rico, the sum of SEVEN THOUSAND TWO HUNDRED THIRTY-NINE DOLLARS AND SIXTY-FOUR CENTS ($7,239.64), value received to our complete satisfaction and content.

"We bind ourselves solidarily to pay the principal of this obligation

to guarantee the balance, which was signed by codefendant Ramón Cobián Chinea, as cosurety.

Santiago Lavandero paid four monthly instalments on the promissory note totalling $1,608.80, but since he failed to pay two or more instalments on the obligation the Cámara went to court to recover the balance of $5,630.84, in accordance with the express authorization granted by an ac-

in the principal office of the CÁMARA INSULAR DE COMERCIANTES MA-YORISTAS in San Juan, Puerto Rico, or in any other place which the holder of this promissory note may designate, in writing, in monthly instalments of FOUR HUNDRED AND TWO DOLLARS AND TWENTY CENTS ($402.20), commencing on the last day of the month of February nineteen hundred and fifty-one, and thereafter on the last day of each succeeding month, the last instalment of FOUR HUNDRED AND TWO DOL-LARS AND TWENTY-FOUR CENTS ($402.24) being payable on the last day of the month of July nineteen hundred and fifty-two.

"It is expressly agreed that default in payment on the due date of two of the aforesaid instalments shall accelerate the maturity of this obligation, and the holder or indorsee of this promissory note, for that reason along and without the need for demand or notice, shall be free to demand immediate payment of the principal of this obligation or of the unpaid part of such principal, and also interest on the total amount due as of the date of such maturity and until payment in full at the rate of five per cent (5%) per annum.

"We waive the right of presentment for payment, protest, notice of nonpayment and protest, and agree that the period for payment be extended without notice of extension, at the creditor's option, and in the event of judicial claim we submit to the jurisdiction of the insular courts of the City of San Juan, Puerto Rico, having jurisdiction over this matter, either by reason of the amount and/or of the subject matter of the action, and we bind ourselves to pay the sum of FIVE HUNDRED DOLLARS ($500) for costs, expenses, and fees of the attorney engaged by the holder of this promissory note to seek recovery thereof, even though the proceedings are instituted in our default.

"San Juan, Puerto Rico, February 9, 1951.
(s) F. SANTIAGO LAVANDERO
(s) RAMÓN COBIÁN CHINEA

"Affidavit No. 1887.

"Subscribed to and sworn before me by Francisco Santiago La-vandero and Ramón Cobián Chinea, of full age, married, property owners, and residents of Bayamón, Puerto Rico, who are personally known to me, to which I attest, in San Juan, Puerto Rico, this 9th day of February 1951.

(s) L. RÍOS ALGARÍN,
Notary Public."

celerated-maturity provision which had been incorporated as one of the conditions of the note. In the answer defendants Santiago and Cobián admitted expressly the execution and delivery of the note, alleged several defenses which are actually aimed at challenging the capacity of the plaintiff entity to file the complaint,[2] and defendant Santiago filed a counterclaim for recovery of the sum of $11,108.80 which he had paid to the Cámara on the occasion of the substitution of the debtor agreed upon, as already stated, and the instalments paid on the note the collection of which is sought.

■■ Appeal was taken from the judgment sustaining the complaint. All the errors assigned hinge on the capacity of the plaintiff association to sue, to bind itself, and to be assignee of the credits of its members and procure their collection.

1. Just a few days ago we passed upon a similar issue on the challenging of the entity Cámara Insular de Comerciantes Mayoristas to act as assignee of the credits of its members and seek collection thereof through judicial channels. We rejected the debtor's position, which is identical with that maintained by defendants-appellants. After examining the applicable legal provisions and the by-laws of that institution, which we need not recite here, we stated in *Cámara Insular, Etc.* v. *Anadón, S. en C., ante*, p. 360, that

---

[2] It was alleged that since the Cámara Insular de Comerciantes Mayoristas was organized as a nonprofit association, it had no legal capacity to sue or to appear on behalf of the members; that although the incorporation clauses authorized such action with a representative character, such action is contrary to law; that the plaintiff association can not be assignee of credits nor seek their collection; that it is not actually the party in interest, and that it is estopped from prosecuting the action because the promissory note involves "ultra vires transactions" and "dealings and transactions in excess of and beyond (its) statutory powers." It was further denied that the defendants received any value in exchange for the obligation, and that there was any "cause or consideration" in the execution of the promissory note. Lastly, it was contended that the expression "value received to our complete satisfaction and content" appearing in the text of the document is false, ineffective, simulated, and nonexistent.

the plaintiff had authority to acquire the credits of its members, even though there was no consideration in the assignment and even though the assignors retained certain rights to any amount that might be recovered. We added that the debtor is in no position to challenge the assignment made, since such assignment does not create new obligations as respects him. In the instant case the situation is still more difficult for defendant, since he can not challenge personally the original assignment of credits against the corporation made by the members in favor of the Cámara, and, furthermore, as a question of reality the original debtor, Sucrs. de Lavandero, Inc., was relieved from the payment thereof,[3] and consented to the novation of the obligation, thereby convalidating it, for such consent expresses the purpose not to use the action of nullity. VIII Manresa, *Comentarios al Código Civil Español* 398–99 (4th ed. 1929).

 2. Since the note in question was executed by defendants in favor of the plaintiff, they can not assert lack of capacity of the creditor entity in order to evade payment of the obligation which they not only assumed voluntarily, but which arose in the judicial business as a result of suggestions made by the principal debtor himself. *B. Fernández Hnos., Sucrs.* v. *Ortega*, 51 P.R.R. 428 (1937); *Sucrs. of Canals Bros. & Co.* v. *Heirs of Quiñones*, 46 P.R.R. 512, 518

---

[3] The trial court concluded, with sufficient support in the evidence, that the corporation received "a release from its indebtedness to the firms which had assigned, for collection, their credits to the plaintiff. Such fact appears clearly from the return which the corporation filed in the Bankruptcy Court, in which it did not include those firms among its creditors." In the brief filed by appellant it is repeatedly reiterated that the corporation has not been relieved by the original creditors, alleging that the account still appears on the books of some of them. This fact does not have the significance attributed to it, and it probably refers to accounting functions for the purpose of deducting as a bad debt the unpaid balance which may ultimately result after the Cámara exhausts the collection steps taken as assignee. It was not shown that an action for recovery has been brought individually by any creditor, or that any extrajudicial steps have been taken.

(1934); *Succr. of Schluter & Co. v. Hernández et al.*, 36 P.R.R. 58 (1926). A similar situation was considered in *Spokane Merchants' Association v. Olmstead*, 327 P.2d 385 (Idaho 1958). In that case several creditors of the Olmstead spouses assigned their claims to the plaintiff association, a merchants' association of the locality; the debtors assigned their assets in the business in favor of the plaintiff, for the benefit of the creditors. It was held that the acknowledgment by the wife prevented her from challenging later the existence and capacity of the plaintiff entity. See, in particular, *Royal Bank of Canada v. Iglesias*, 46 P.R.R. 157 (1934); also, *Kelly v. Kosuga*, 358 U.S. 516 (1959). On the estoppel of the defendant to allege lack of capacity of the plaintiff, see *Centro de Dependientes v. Montalvo*, 72 P.R.R. 381, 384 (1951). Furthermore, the action of defendant Santiago in filing a counterclaim against the Cámara for the recovery of money paid to the latter, precludes him from questioning the plaintiff's capacity. *Flash Cleaners v. Columbia Appliance Corp.*, 319 P.2d 454 (Cal. 1957); *Brandtjen & Kluge v. Biggs*, 288 P.2d 1025 (Ore. 1955); *Bell v. Commercial Investment Trust Co.*, 246 Pac. 1102 (Okla. 1926).

▪ 3. The averment that there was no consideration in the execution of the promissory note object of the present action is without merit, because the obligors did not receive money or properties from the creditor in exchange for the obligation. This case is an example of subjective novation by change of the debtor, that is, the substitution of an obligation for a subsequent obligation which extinguished the old one, which is performed by changing the obligor with the express consent of the creditor. On necessity of the creditor's consent, see *Ríos v. Rosaly*, 50 P.R.R. 652 (1936); *Bou v. Colorado*, 24 P.R.R. 125 (1916). Specifically, the transaction is one of delegation, that is, when the debtor (the corporation) offers and the creditor accepts a third party (Santiago and Cobián) who consents to the substitution, in con-

tradistinction to the modality of *expromissio* which operates when the substitution of the debtor is made with the spontaneous intervention of a new debtor who takes the place of the old debtor, without his consent, but with that of the creditor. Section 1157 of the Civil Code (31 L.P.R.A. § 3241); IV-I Puig Peña, *Tratado de Derecho Civil Español* 350 (1951); 3 Castán, *Derecho Civil Español, Común y Foral* 318 (8th ed. 1954); VIII Manresa, *Comentarios al Código Civil Español* 392 (4th ed. 1929); Velázquez, *Obligaciones y Contratos Según la Legislación y la Jurisprudencia Puertorriqueña* (University of Puerto Rico, mimeograph, 1939, pp. 265, 269–74); De Cossio, *La Transmisión Pasiva de las Obligaciones, a Título Singular*, 1 *Anales de la Academia Matritense del Notariado* 187–206 (1943). Regarding the consideration of the new obligation of the delegated debtor (the defendants) in favor of the delegatee (Cámara Insular de Comerciantes Mayoristas), says Professor Velázquez at p. 273:

"The obligation assumed by the party delegated with respect to the delegatee has a consideration, not in the personal relations arising between them, but in the relations which join the party delegated and the party delegating. The party delegated contracts an obligation to the delegatee to make a gift, a loan, or a payment to the party delegating. The delegatee may even be unaware of the purpose sought by the party delegated. Thus, in his relations with the delegatee, the obligation assumed is separate from its consideration. It is an abstract obligation."

On the other hand, we have held that where a promissory note is subscribed in substitution for other prior obligations, the fact that no money or property was received from the creditor by virtue of such note does not preclude the existence of a consideration therefor. *National City Bank v. Martínez*, 41 P.R.R. 162 (1930); *Roig Commercial Bank v. Valladares et al.*, 38 P.R.R. 393 (1928); *Commercial Bank v. Arguinzonis et al.*, 35 P.R.R. 260 (1926).

4. We need not discuss other collateral questions raised in the elaborate brief for appellants, for in the final

analysis they all relate to those we have already considered. Regarding the legal services which the Cámara Insular de Comerciantes Mayoristas allegedly provides to its members, see *The Unauthorized Practice of Law by Lay Organizations Providing the Services of Attorneys*, 72 Harv. L. Rev. 1334 (1959). It can not be denied that defendant Santiago derived a personal benefit from the cancellation of the mortgage by the Cámara, which the corporation Sucrs. de Lavandero, Inc. had constituted. This fact enabled him to sell on more advantageous conditions the shares which he owned in that corporation and to engage, according to his own testimony, in more lucrative activities. Moreover, if we adopted the solution proposed by him, we would in fact prejudice those persons who trusted in the representations made to them and which prevented them from seeking by other means collection of that which was lawfully due to them. Although this was not the deliberate purpose of Santiago's acts, such would be the result.

The judgment rendered by the Superior Court, San Juan Part, on April 4, 1957, will be affirmed.