**PHILADELPHIA WORLD HOCKEY CLUB, INC., Plaintiff,**

v.

**PHILADELPHIA HOCKEY CLUB, INC., et al., Defendants.**

**Civ. A. Nos. 72–1661, 72–1807, 72–1902 and 72–1906.**

United States District Court, E. D. Pennsylvania.

Sept. 27, 1972.

See also, 351 F.Supp. 462.

458

Pepper, Hamilton & Scheetz, by Edward W. Madeira, Jr., Philadelphia, Pa., for plaintiff.

Blank, Rome, Klaus & Comisky, by Edwin P. Rome, and Richard P. McElroy, Philadelphia, Pa., and Covington & Burling, by Harry L. Shniderman, and Herbert Dym, Washington, D. C for Philadelphia Hockey Club, Inc., Boston Professional Hockey Assn., Inc., Charles O. Finley and Co., Inc., Chicago Blackhawk Hockey Team, Inc., Detroit Hockey Club, Inc., California Sports, Incorporated, North Star Financial Corporation, Le Club de Hockey Canadien, Inc., Madison Square Center, Inc., Pittsburgh Penguin Partners, limited partnership, St. Louis Blues Hockey Club, Inc., Maple Leaf Gardens, Limited, Vancouver Hockey Club, Limited, Niagara Frontier Hockey Corp., and National Hockey League, defendants.

Arthur Morse, Chicago, Ill., for Chicago Blackhawk Hockey Team, Inc.

Harold E. Kohn, P. A., by Stephen E. Haberfeld, Philadelphia, Pa., for John McKenzie.

. Jerome H. Torshen, Chicago, Ill., for Sports Centrepoint, and others.

Sommer, Tinkham, Barnard & Freiberger by William C. Barnard, Indianapolis, Ind., for Chicago Blackhawk Hockey Team, Inc.

## OPINION OF THE COURT*

HIGGINBOTHAM, District Judge.

In the courts of Chicago and Philadelphia, the litigants and their counsel have exerted an aggressiveness equal to the vigor which their purported superstar, Robert M. Hull, has exemplified on the ice rink.

All parties concede that Hull is "one of, if not the greatest, professional hockey players in the world."

But after the thousands of words of adoration and occasional invectives ,by counsel, the case can be distilled to two relatively simple issues:

First, despite 28 U.S.Code, § 2283, does this Court have jurisdiction to enjoin the Chicago Blackhawk Hockey Team from litigating their action which was filed against Robert M. Hull and his agent on August 18, 1972, in the Circuit Court of Cook County, docketed in the Circuit Court of Cook County, Illinois, as Cause No. 72–CH 4727?

Secondly, if this Court is not precluded from jurisdiction by 28 U.S.Code § 2283, should, as a matter of discretion, the Court restrain the parties from litigating the aforementioned case in the Circuit Court of Cook County tomorrow morning, September 28, 1972?

The case in the Circuit Court of Cook County was removed at the request of Hull and his agent to the United States District Court for the Northern District of Illinois. After proceedings before three United States district judges there, Judge Parson, Judge Lynch, and Judge Decker, the case was remanded to the Circuit Court of Cook County. Upon remand, and with the express agreement of counsel for Hull, the state trial judge set September 28, 1972, as the hearing date for the Blackhawks' motion for preliminary injunction, and further granted a temporary restraining order enjoining Hull until September 30, 1972, from doing those activities recited in the Blackhawks' prayer for relief in the Chicago Circuit Court case.

Jerome H. Torshen, as counsel in this case, has been, like ancient Gaul, divided in three parts, with different loyalties and different positions, as he spoke for different clients. In the circuit-court case, while representing Hull, he agreed and signed through his authorized representative, a consent decree, for the case to be tried on September 28, 1972. After he had made the latter agreement but

* Oral Opinion dictated from the Bench.

then acting as counsel for another client, Sports Centerpoint Enterprises, the Winnipeg Jets, and perhaps also acting on behalf of the Chicago Cougars, he then challenged the Blackhawks proceeding with the trial in the state court on September 28, 1972, which very trial he had agreed to while representing Hull.

While this latter challenge was pending before my good friend, Judge Decker of the United States District Court for the Northern District of Illinois, the entire case, including the issues presented here, was transferred to the United States District Court of Pennsylvania under 28 U.S.Code § 1404(a). The matter was expedited, the record was flown in on Monday night, and we had a conference at 8:30 A.M., Tuesday, September 26th, and set the schedule for the matters which have been argued before us today.

The transfer under § 1404(a) was made purportedly because of litigation involving the National Hockey League and the World Hockey Association pending before me where pretrial conferences had been held in our court, discovery and pretrial dates had been set, and arguments on motions for summary judgment had been scheduled for October 9, 1972, Columbus Day, theoretically an official holiday. Evidentiary trials are tentatively scheduled for October 10, 1972, if on October 9, 1972, I hold that evidentiary trials will be appropriate.

I regret the frantic pace to which all of the parties have been subjected. Counsel have worked diligently to expedite the matter so that I could make a judgment at the earliest possible date, but the necessity of the schedule has been caused because the World Hockey League has scheduled openers on or around October 11th or October 12th, 1972.

The threshold-jurisdictional issue is whether 28 U.S.Code § 2283 as enacted in 1948, precludes this Court from granting an injunction to stay the aforementioned proceedings in the Chicago Circuit Court.

Section 2283 provides as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

While there has been extensive scholarly and judicial comment in general on 2283, it should be noted that no counsel have called to my attention any case where the United States Supreme Court has ruled specifically on the applicability of Section 2283 in an antitrust case. The Supreme Court apparently has never ruled whether the Clayton Act, Section 16, 15 U.S.Code Annotated 26, is or is not one of the permissible exceptions to the anti-injunction provisions which would normally preclude a federal court from granting an injunction to stay proceedings in a state court.

As recently as last term, in fact, on June 19th, 1972, in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705, the United States Supreme Court exhaustively examined the history of 2283 and the exceptions for a federal court to grant relief against state courts under 2283.

Unfortunately for the litigants here, Mitchum, supra, involved 42 United States Code 1983, which was originally Section 1 of the Civil Rights Act of 1871. The Supreme Court held that 1983 was a specific exception to the anti-injunction provisions of 2283, and that the district court must, therefore, decide the issue of discretion. Thus they rejected the district court's assumption, and reversed the district court judge, since he had assumed that in 42 U.S.Code 1983 actions a federal court had no jurisdiction by reason of 2283 to enjoin a state court.

As a result, I must look elsewhere for definitive authorities which have construed 2283. For this circuit, there has not been called to my attention any case in which either the Court of Appeals of the Third Circuit or any district court

has discussed or decided a 2283 issue as it pertains to the antitrust laws.

Similarly, counsel have not called to my attention any legislative history in the Clayton Act which indicates whether Congress had given consideration in passing the Clayton Act as to the possibility of federal courts enjoining state courts by reason of the antitrust laws. In contrast, Justice Stewart's opinion, in *Mitchum*, is an authoritative analysis of the history of 1983 which established beyond dispute the congressional intent. As he said, speaking for the court, "the debate was not about whether the predecessor of § 1983 extended to actions of state courts, but whether this innovation was necessary or desirable."

Upon a review of the leading appellate cases cited as to the problems involved herein, I find, with due respect, that the holdings of the Court of Appeals are partially opaque. So, at this point I am not free from doubt as to whether 2283 precludes federal courts from enjoining state-court actions where there is a purported Clayton Act cause of action.

Certainly the cases such as Vernitron Corp. v. Benjamin, 2 Cir., 440 F.2d, 105, and Studebaker Corp. v. Gittlin, 2 Cir., 360 F.2d 692, are not holdings on the Clayton Act, but, rather, involve other federal statutes.

In Potter v. Carvel Stores of New York, 203 F.Supp. 462, the district court's opinion was a precise holding that 2283 precluded a federal court from enjoining a state court where the cause of action was the Clayton Act. However, the Court of Appeals' per-curiam opinion impliedly sanctions the district court's ruling when they state their affirmance is "for reasons stated" by the district court judge. Yet the Court of Appeals for the Fourth Circuit, 314 F.2d 45 may conceivably have been in doubt on the jurisdictional issue because they hastened to add "if he might have granted the injunction, denial of the motion was certainly within the range of the discretion lodged in him and is consistent with the principle of Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475."

If the district court was so clearly accurate in its holding that there was no jurisdiction, it would appear to have been unnecessary for the Court of Appeals to have made an alternative holding as to the range of discretion of a district judge.

Reines Distributors, Inc. v. Admiral Corp., D.C., 182 F.Supp. 220, cited by counsel for the Blackhawks, was not affirmed by the Court of Appeals of the Second Circuit on the jurisdictional issue as to 2283, but, instead, the Court of Appeals reversed the district court for his grant of a motion for summary judgment and an award of damages. 319 F.2d, 609.

So, it does not appear from the cases cited that the Court of Appeals for the Second Circuit has decided or has had to decide whether 2283 precludes a federal court from issuing an injunction against a state court under the circumstances of this Clayton Act case.

Finally, Red Rock Cola Co. v. Red Rock Bottlers, 5 Cir., 195 F.2d 406, has some, if probably not more, of the ambiguity in Potter v. Carvel Stores of New York, for the Court of Appeals noted in Red Rock, supra, that:

"Assuming, for the sake of argument, but by no means deciding, that cases could arise in which a State Court proceeding could be properly considered to threaten 'a violation of the Anti-Trust Laws' so as to come within the last cited statute, 15 U.S. Code, 26, and that likewise instances might arise when a Federal Court injunction against such proceeding would be necessary in aid of the jurisdiction of the Federal Court within the terms of Section 2283, supra, we find no such situation presented by this record."

█ Thus, I am presented with a case which is one of first impression for this Circuit, on which the Supreme Court has not precisely ruled, and on which no district court in this circuit has dis-

cussed or decided the issue. The decisions in other circuits or other district courts are, of course, entitled to serious consideration, but they are not binding, and for our purposes are not too illuminating.

Since a decision must be made *this evening*, and since Hull and his agent have the burden of proof to establish their rights to the temporary restraining order, I find that on the authorities presented thus far that the moving parties have failed to sustain their burden of proof in establishing jurisdiction for the temporary restraining order requested. However, I do not mean to imply that if I were presented with a record which explored the legislative history of the Clayton Act as it pertains to this issue, or if different authorities were presented that I would necessarily hold again that under 2283 a federal court would have no jurisdiction to enjoin an action in a state court on facts similar to the instant record.

Of course, I am making no adjudication on the merits of Mr. Hull's antitrust argument or the defenses therein.

The parties are entitled to an alternative finding by me on the issue of what my position would have been if I had concluded that the moving parties had met their burden in establishing that the Clayton Act is an exception to the anti-injunction provisions of 2283. I am making this alternative finding so that in the event the parties seek an appeal, the Court of Appeals will know what my jurisdictional holding is and also what my alternative holding would have been if I had jurisdiction.

Even if I had jurisdiction, I would decline under the unique facts of this record to grant the temporary restraining order requested. *The Chicago Blackhawks, through their counsel, have made stipulations of record for which the Chicago Blackhawks will be held responsible,* and I have taken that stipulation into consideration in the exercise of my discretion to not grant a temporary restraining order. I do not know whether I would have denied the temporary restraining order if the stipulation which has been given had not been given, *and they will be bound by it*.

We have set up a very precise discovery and pre-trial schedule. We are scheduled to have argument on October 9th, 1972, as to motions for summary judgment as to all of the cases presently pending before me, and if I conclude that an evidentiary trial is necessary, that evidentiary trial will start on October 10th, 1972.

An argument, which is not without merit, has been made before me in terms of judicial economy and the inappropriateness of the multiplicity of litigation which necessarily takes place by reason of permission to litigate this issue in the Chicago Circuit Court while other litigation is taking place in this court. The time for arguments of judicial economy would have been more appropriate during the hours when counsel for Hull was agreeing to the duplicity of litigation when he agreed to the state trial judge setting a hearing date on September 28, 1972.

Some of the arguments made by counsel, in all due respect, have been made with extraordinary enthusiasm and seemed to have been directed more to Sports Illustrated than to the court of record. I recognize and, indeed, commend Mr. Hull on his status as a meritorious superstar in this field which he has reached by long years of extraordinary effort. Yet when litigating in the United States District Court whether one is a superstar on the ice rink or a giant in the corporate arena, or whether one is weak, poor and impotent, the ground is level for all, and the burden of proofs and the applicable precedents are the same.

In this case, counsel for Mr. Hull has failed to meet the prerequisite burden of proof to require the temporary restraining order sought.