**MEDUSA CORPORATION, an Ohio corporation, Plaintiff-Appellee,**

v.

**Fred GORDON et al., Defendants-Appellants.**

**No. 73–1889.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1974.

Decided April 25, 1974.

Martin S. Stoneman, Gelman & Hand, P.C., Troy, Mich., for defendants-appellants.

B. Kingsley Buhl, Detroit, Mich., for plaintiff-appellee; Dickinson, Wright, McKean & Cudlip by John A. Krsul, Jr., Detroit, Mich., on brief.

Before EDWARDS, PECK and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal from the granting of summary judgment for the appellee in an action on a promissory note dated

September 30, 1972. The judgment against appellants was for the principal amount of the note, $34,460.64, together with interest.

On the same date, September 30, 1972, appellants executed a release which covered all claims arising out of prior business transactions with Medusa, including a note of February 9, 1970. When the first installment on the September 30, 1972 note was due, the appellants failed to pay. Pursuant to the provisions of the note, the appellee declared the note in default and payment due in full. Each of the appellants was informed of the demand for payment by certified mail.

Having failed to obtain payment. Medusa filed this action in the district court. The appellants filed an answer, alleging lack of notice as an affirmative defense and purporting to reserve the right to allege additional affirmative defenses.

On June 12, 1973 the appellee filed a motion for summary judgment and, subsequently, the appellants filed a motion for leave to file an amended answer, adding as an affirmative defense that the contract sued upon by the plaintiff violated federal antitrust statutes regulating restraints of trade because of an alleged oral agreement that the appellants purchase their cement products exclusively from appellee, Medusa.[1]

After oral argument on the motions, the court below granted the appellee's motion for a summary judgment and denied the appellants' motion for the reason that the affirmative defense sought to be added by the appellants was not, as a matter of law, a valid defense to an

action on the note. Aside from the so-called affirmative defense, the appellants advanced no reason why the motion for summary judgment on the note should not be granted.

Our review of Michigan law reveals an absence of clear cut precedent on the principal issue before us—whether an oral agreement by the maker of a promissory note that allegedly violates Michigan antitrust laws constitutes a valid affirmative defense to the enforcement of the note.

The transcript of the arguments on the motions below reveals that the district court relied on International Harvester Co. v. Eaton, 163 Mich. 55, 127 N.W. 695 (1910), in deciding that the appellants' proffered defense was not a valid one to the enforcement of the contract. *International Harvester*, though informative, is not directly in point. It stands for the proposition that it is no defense to an action on a contract, which is itself legal and valid, that the appellee is a "trust", "monopoly" or "combination" in restraint of trade, if the transaction was in no way affected or induced by the illegality. The present appellants challenge an element of the contract being sued upon, not the status of the Medusa Corporation as a trust or monopoly.

The appellants urge that Kukla v. Perry, 361 Mich. 311, 105 N.W.2d 176 (1960), provides guidance as to the applicable Michigan law. In *Kukla* the defendant loaned the plaintiffs $18,000.00 and received in exchange a promissory note for $18,000.00 and a chattel mortgage. A provision in the chattel mortgage, on which the defendant attempted

---

1. The appellants' original motion for leave to file an amended answer alleged that a purportedly illegal oral agreement between the appellee and the appellants was part of the contract sued upon and that this illegality, arising from violations of federal antitrust laws, constituted an affirmative defense to enforcement of the contract. However, at argument on this motion, the appellants also took the position that this exclusive purchase agreement violated Michigan Antitrust laws, M.S.A. § 28.51 and 28.52, M.C.L.A. §§ 445.731, 445.732, thus constituting another affirmative defense to its enforcement. On appeal, the appellants appear to have abandoned the purported affirmative defense based on federal antitrust law violations. We therefore only analyze the validity of alleged Michigan antitrust law violations as an affirmative defense to the enforcement of the contract in issue. However, federal law is helpful in determining the Michigan law on the issue before us.

to foreclose, required one of the parties to purchase all of its insurance from the defendant—a condition that was in direct contravention of a specific state statute concerning insurance contracts. The Michigan Supreme Court, in refusing to enforce the note or chattel mortgage securing the note, held that the illegal covenant was an essential part of the mortgage and loan and therefore not severable from the contract. Clearly, in the case at hand, the alleged illegal oral agreement was not included within the terms of the written note sued upon nor would enforcement of the contract further the alleged illegal purposes of the oral agreement. Thus *Kukla,* like *International Harvester,* would not appear to be decisive of the issue with which we are here concerned.

The paucity of Michigan precedent requires us to look elsewhere for guidance. The United States Supreme Court in Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959), clarified the federal law in this area. In *Kelly,* the plaintiffs sought payment for the delivery of a large quantity of onions. The defendant admitted receiving the onions, but asserted illegality of the transaction under Section 1 of the Sherman Act as a defense to the enforcement of the debt. Without deciding the legality of the transaction the Court assumed "That the [defendant's] allegations duly charge a violation of the Sherman Act." 358 U.S. at 518 n. 2, 79 S.Ct. at 431. The Court nevertheless held that the debt was enforceable. In doing so the Court stated:

"As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court. This has been notably the case where the plea has been made by a purchaser in an action to recover from him the agreed price of goods sold."

\* \* \* \* \* \*

"If the defense of illegality is to be allowed as a collateral method of enforcement of the antitrust laws, as the breadth of the petitioner's argument

suggests, it must be said that this theory creates a very strange class of private attorneys general."

\* \* \* \* \* \*

"Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.'" 358 U.S. at 518–521, 79 S.Ct. at 431.

The teachings of *Kelly* were followed by this Court in Atlantic Richfield Co. v. Malco Petro, 471 F.2d 1258 (6th Cir. 1972), an action by a manufacturer of petroleum products to recover on a distributor's promissory note given in connection with a loan made at the time the distributorship agreement was signed. The distributor attempted to avoid the obligation by asserting that the extension of credit was part of an illegal tying arrangement devised by the petroleum company. This Court rejected the proffered defense, stating:

"Sometimes a party will claim the existence of such an illegal tying arrangement as a defense to a suit on a debt or contract in furtherance of such an arrangement. The use of this defense, however, is not favored and has been limited by the Supreme Court strictly to situations where enforcement of a debt or contract would make the courts 'a party to the carrying out of one of the very restraints forbidden by the Sherman Act.'"

\* \* \* \* \* \*

"The appellant will not be allowed to use the antitrust law to avoid paying its just debts. If there was an illegal tying agreement and if the distributor here was injured, there is an adequate remedy under the provisions of the antitrust laws." Id. at 1260–1261.

Enforcement of the promissory note in this case in no way furthers the alleged illegal activity of Medusa.

We are persuaded that the Michigan Supreme Court on the facts presented here would apply the same rationale applied by the Supreme Court in *Kelly* and by this Court in *Malco*. If the purported oral agreement is violative of antitrust laws, an issue we do not here decide, the remedy lies in antitrust litigation under appropriate statutes, not in avoidance of a just debt.[2]

Affirmed.

2. Indeed, we were advised at oral argument that appellants have sued Medusa in federal court for the alleged violation of the federal antitrust statutes in connection with the same alleged oral agreement here complained of. This action is presently pending.