**SUNSHINE PACKERS, INC., Appellant,**

v.

**AMERICAN CAN COMPANY, Appellee.**

No. 25198.

United States Court of Appeals
Fifth Circuit.

May 22, 1968.

E. Snow Martin, Lakeland, Fla., Martin & Martin, Lakeland, for appellant.

John M. Allison, Tampa, Fla., Harvey M. Applebaum, Washington, D. C., J. Randolph Wilson, Washington, D. C., Covington & Burling, Washington, D. C., Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant hurls the spear of an antitrust decree at its obligation to pay a note. The facts and relevant law, however, do not justify our rendering its promises vulnerable.

The appellee manufactures tin cans and other metal containers. The appellant uses tin cans in packing citrus products. The transactions between the two which are relevant to this controversy occurred during the 1961–1962 citrus season.

In February, 1962, the appellant purchased an orange grove in Martin County, Florida, paying approximately $90,-000.00 in cash. At that time the appellant was indebted to the appellee for recent can purchases in the sum of approximately $100,000.00, but the acquisition of the citrus grove rendered it unable to make payments. Therefore, on March 9, 1962, the appellee accepted the appellant's promissory note of approximately $110,-000.00 in lieu of immediate payment. Between March, 1962, and January, 1966, the appellant paid more than $40,000.00 on the note.

On January 17, 1966, the appellee filed a complaint against the appellant seeking the payment of four promissory notes and an open account. The total principal recovery sought was approximately $400,-000.00, of which $89,579.40 represented principal due on the note signed on March 9, 1962.

The appellant admitted liability on all debts except the note of March 9, 1962. Concerning this note, it did not contest the signing of the note, nor did it contest that the note comprehended in some manner its open-account debt to the appellee for past purchases of cans. Instead, it set up the "Affirmative Defense" that the appellee's execution of the note represented a violation of a specific antitrust decree and contended that the court should not enforce the product of the appellee's illegal acts. We quote the appellant's defense as stated in its answer filed in the district court below:

"(2) The Plaintiff herein was the Defendant in an action brought by the United States of America in the District Court for the Northern District of California, Southern Division, such

case being numbered 26345–H. On June 23, 1950, Final Judgment was entered against the Plaintiff herein. Paragraph 9 of said Final Judgment provides as follows:

'Defendant is hereby enjoined and restrained from making loans to container users or guarantees of loans or credit for container users, excepting where reasonably necessitated by the financial distress of the container user.'

\* \* \* \* \* \*

"(6) The Plaintiff agreed to accept the Defendant's Note \* \* \* in lieu of payment. The Defendant was then able to conclude its purchase of the orange grove rather than paying the Plaintiff. This transaction was not a customary practice of the Plaintiff nor was it necessitated by the financial distress of the Defendant. The acceptance of the aforesaid Note is in direct violation of Paragraph 9 of the Final Judgment against the Plaintiff and said Note is therefore void."

The district court rejected this defense, and the appellant seeks appellate relief. We affirm.

Although the appellee does not deny the 1950 decree, it counters the appellant's defense with three arguments:

(1) Execution of the March 9, 1962, promissory note constituted merely an extension in terms and not a "loan" as prohibited by the 1950 antitrust decree.

(2) Even if the note did constitute a violation of the 1950 decree, such violation should not entitle the appellant to receive "something for nothing," i. e., the tin cans for which debt the note was given.

(3) The appellant should not benefit from the illegality of a transaction which it induced.

We start our analysis with the Supreme Court decision in Kelly v. Kosuga, 1959, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed. 2d 475. The plaintiff in that case sought payment for the delivery of fifty cars of onions. The defendant admitted receiving the onions but contended that the debt was unenforceable because the sale had violated Section 1 of the Sherman Anti-trust Act, 15 U.S.C. § 1. It alleged, and the court accepted as true, that the plaintiff induced the transaction by threatening to deliver its onions on the futures exchanges, which would have resulted in depressed prices. Nevertheless, while assuming that the plaintiff's action had violated the Sherman Act, the court enforced the sales contract. We find the following pronouncements in the *Kelly* opinion to be relevant to the case at bar:

"As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court. This has been notably the case where the plea has been made by a purchaser in an action to recover from him the agreed price of goods sold." 358 U.S. at 518, 79 S.Ct. at 431.

\* \* \* \* \* \*

"If the defense of illegality is to be allowed as a collateral method of enforcement of the antitrust laws, as the breadth of the petitioner's argument suggests, it must be said that his theory creates a very strange class of private attorneys general." 358 U.S. at 520, 79 S.Ct. at 431.

\* \* \* \* \* \*

"Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' Continental Wall Paper Co. v. Louis Voight & Sons Co. supra (212 US at 271, 29 S.Ct. at page 296) (dissenting opinion)." 358 U.S. at 520–521, 79 S.Ct. at 432.

By quoting from Justice Holmes' dissent in Continental Wall Paper Co. v. Louis Voight & Son Co., 1909, 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486, the Supreme Court in *Kelly* severely wounded,

though perhaps not mortally so,[1] the *in pari delicto* argument as it relates to antitrust defenses in contract actions. The appellant apparently concedes the infliction of wounds because it omits any reference to *Continental Wall Paper* and instead states in its brief, "We do not find any reported case which passes on the point presented to this Court." Moreover, it acknowledges the recent application of the *Kelly* doctrine in cases involving antitrust consent decrees. Beloit Culligan Soft Water Service, Inc. v. Culligan, Inc., 7 Cir. 1959, 274 F.2d 29; New York Automatic Canteen Corp. v. Automatic Canteen Co. of America, S.D.N.Y.1962, 1963 CCH Trade Cases ¶ 70,625; Western Electric Co. v. Solitron Devices, Inc., N.Y.Sup.Ct. 1967, 1967 CCH Trade Cases ¶ 72,057 (see 285 N.Y.S.2d 269).

The appellant engages in negative niceties, attempting to distinguish *Kelly* because it did not involve a violation of a specific decree [2] and attempting to distinguish the latter cases because they involved consent decrees rather than litigated decrees.[3] Such distinctions do not meet the realities of this transaction. The appellant does not contend, as did the defendant in *Kelly,* that it was induced or coerced into the transaction. Nor does it contest the appellee's statement that it actively sought the arrangement it now claims to be illegal. The transaction which satisfied its quest was only obliquely, if at all, proscribed by the 1950 decree. Such a transaction does not pierce *Kelly's* armor.

Affirmed.

1. The court in *Kelly* acknowledged the *Continental Wall Paper* case as "the leading case here in which the defense was allowed." It then expressly limited this former decision to cases where a plaintiff was attempting to carry out "one of the very restraints forbidden by the Sherman Act." The court added: "Any thought that the Court might have been proceeding on broader grounds was shortly afterwards laid to rest by the unanimous opinion of the Court in the Wilder Case. 236 U.S. at 177 [35 S.Ct. at 402]." Kelly v. Kosuga, 358 U.S. at 520, 79 S.Ct. at 432. See also Lewis v. Seanor Coal Co., 3 Cir. 1967, 382 F.2d 437, 441, cert. den., 1968, 390 U. S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137; Beloit Culligan Soft Water Service, Inc. v. Culligan, Inc., 7 Cir. 1959, 274 F. 2d 29, 33–35; Shoaf v. Triangle Publications, Inc., E.D.Pa.1967, 43 F.R.D. 10. Cf. analysis at Hamman v. United States, D.Montana, 267 F.Supp. 420, 429–432.

2. On the other hand, the appellee points out that antitrust decrees often proscribe actions which are not in themselves illegal under any antitrust act. Such is the case, it argues, with paragraph 9 of the 1950 decree. Therefore, since *Kelly* immunized a promise having some relation to a transaction condemned by statute, it has *a fortiori* application here. See Beloit Culligan Soft Water Service, supra, 274 F.2d at 34. Cf. United States v. American Society of Composers, Authors & Publishers, 2 Cir. 1965, 341 F.2d 1003; United States v. Paramount Pictures, S.D.N.Y.1948, 75 F.Supp. 1002; Paul M. Harrod Co. v. A. B. Dick Co., N.D.Ohio, 1964, 194 F.Supp. 502; Kearuth Theatres Corp. v. Paramount Pictures, Inc., S.D.N.Y.1956, 1956 CCH Trade Cases ¶ 68,574; Ida Amusement Corp v. RKO Pictures Corp., S.D.N.Y.1954, 1954 CCH Trade Cases ¶ 67,837; General Aniline & Film Corp. v. Bayer Co., Inc., 1953, 305 N.Y. 479, 484, 113 N.E.2d 844, 846.

3. But cf. United States v. Paramount Pictures, Inc., supra note 2, which followed the litigation reported in 66 F.Supp. 323 and 70 F.Supp. 53, modified 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. See also Kearuth Theatres Corp. v. Paramount Pictures, Inc., supra note 2, Ida Amusement Corp. v. RKO Pictures Corp., supra note 2.