**RESPONSE OF CAROLINA, Plaintiff-Appellee,**

v.

**LEASCO RESPONSE, INCORPORATED et al., Defendants-Appellants.**

**RESPONSE OF CAROLINA, INC., Plaintiff-Appellee,**

v.

**LEASCO RESPONSE, INCORPORATED et al., Defendants-Appellants.**

**DATATRON CORPORATION, d/b/a Response of Louisville, Plaintiffs-Appellees,**

v.

**LEASCO RESPONSE, INCORPORATED et al., Defendants-Appellants.**

Nos. 73–3362, 73–4008, 73–4009.

United States Court of Appeals, Fifth Circuit.

July 31, 1974.

Rehearing and Rehearing En Banc Denied Oct. 8, 1974.

John R. Kelso, Harold L. Ward, Miami, Fla., Morton L. Ginsberg, New York City, for defendants-appellants.

Joseph W. Womack, J. Kirk Wood, Miami, Fla., for plaintiffs-appellees.

Before TUTTLE, COLEMAN and AINSWORTH, Circuit Judges.

TUTTLE, Circuit Judge:

Appellant-defendant, Leasco Response, Inc. (Leasco), appeals the issuance of preliminary injunctions in these consolidated cases by the district court as requested by appellees-plaintiffs, Response of Carolina (Carolina) and Datatron Corporation (Datatron). The injunctions grew out of anti-trust actions filed by Carolina and Datatron against Leasco.

## FACTS

Carolina, a North Carolina corporation, and Datatron, a Kentucky corporation, entered into contracts with Leasco, one consisting of a franchise agreement involving certain computer programing (software) and the other a computer equipment lease (hardware). The franchise agreement committed Carolina and Datatron to pay to Leasco a franchise fee and royalty payments equal to 15% of their gross receipts. The equipment lease provided for a monthly rental charge with additional maintenance costs. Carolina ceased, on approximately April, 1972, and Datatron on approximately July, 1973, making rental and royalty payments to Leasco. Shortly after each franchisee terminated contractual payments, they filed the instant suits against Leasco alleging violations of the Sherman and Clayton Acts and certain state laws. One anti-trust allegation charges an illegal territorial restraint in the form of a contract provision requiring a 70% royalty on sales made by the franchisee outside of its primary area of responsibility. The second contends that Leasco discriminates against Carolina and Datatron, as franchisees, in favor of Leasco's company-owned computer centers (preferential dealings).

On the day prior to Carolina's filing its action, Leasco brought suit on the contractual agreements in the state courts of North Carolina seeking the unpaid royalties and rentals and the recovery of possession of the leased computer equipment. Carolina maintains that the contracts are void under the federal anti-trust laws[1] and, therefore, unenforceable. The Antitrust laws vest exclusive anti-trust jurisdiction in the federal courts, 15 U.S.C.A. § 4. For that reason, a defense based on federal anti-trust law cannot be litigated in the state court action filed by Leasco. As part of

---

1. *See* section 1 of the Sherman Act, 15 U.S.C.A. § 1:
"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

its relief in the anti-trust action, therefore, Carolina sought a preliminary injunction against Leasco from prosecuting further the state court suit, alleging that its successful effect would be to end Carolina's business.

As part of its relief, Datatron also sought an injunction to block any actions by Leasco which would result in the termination of its business. No suits were pending by Leasco against Datatron at the time of the hearing on the preliminary injunction.

The district court agreed with Carolina and Datatron, and issued the requested injunctions. In Carolina's suit, the court prohibited Leasco from prosecuting the state court action and interfering with the ordinary course of Carolina's business.[2] In Datatron's suit, the court enjoined Leasco from failing to perform any act under the contracts and from removing any equipment from Datatron's possession.[3]

Leasco appeals from the issuance of these preliminary injunctions.

2. The pertinent part of the injunction reads:
"The Defendant, Leasco Response, Inc., it's retainers, attorneys, officers, agents, servants, employees and all others in active concert or participation with said Defendant, to whom notice of this order shall come by personal service or otherwise, be and they are each enjoined and restrained until further order of the Court from:
A) Further prosecuting or calling on for hearing, any motion or other application in Cause No. 73–CVS 8500 styled:
Leasco Response, Inc.
vs.
Response of the Carolinas Inc., et al
now pending in the Superior Court of Mecklenburg County, North Carolina, which motion or prosecutorial application has as its object either the securing of a money judgment by Leasco against Response or the repossession of computer hardware, attachments, parts, or components which are by their nature essential to the continuing operation of Plaintiff's business.
b) Doing any act or thing the effect or probable fruition of which will disturb the status quo of the described State Court litigation in Mecklenburg County pending further order of this Court or any transferee court.
c) Disconnecting, interrupting or otherwise rendering inoperative, interstate telephone trunks, lines, cables or other links between Plaintiff's business and Leasco's computers at Bethesda, Maryland or elsewhere.
d) Threatening, intimidating, obstructing, or in anywise interfering with the officers, agents, and employees of the Plaintiff, Response of Carolina, Inc. in the ordinary and customary course of its business activities.
e) Enticing, threatening or intimidating Plaintiff's customers in any way. The Court intends that Leasco and those acting for it refrain from further soliciting

Plaintiff's customers away, from telephoning, writing or otherwise contacting the Plaintiff's present customers in pursuit of any objective to encourage said customers not to do business with the Plaintiff for whatever reason, and from calling or writing Plaintiff's customers advising them that the Plaintiff will go out of business or cease operations on a date certain, or other like conduct."

3. The pertinent part of the injunction reads:
"The Defendant, LEASCO RESPONSE, INC., its retainers, attorneys, officers, agents, servants, employees and all others in concert or participation with said Defendant to whom notice of this order shall come by personal service or otherwise, be and they are each enjoined and restrained until further order of the Court from:
1. Failing or refusing to perform or do any act, deed or thing under any contract or obligation between it and the Plaintiff.
2. Removing any equipment, components or parts (hardware) from the Plaintiff's possession, control, custody or property.
3. From harassment, interruption, or interferring with Plaintiff, its employees or business operations in any way. The Court also intends that no such acts be done by the Plaintiff toward the Defendant.
4. From refusing within five (5) days to deliver the two drives (described by the witnesses at the hearing) upstairs to the Plaintiff's equipment room. In this connection and in keeping with the Defendant's request, Plaintiff may if it desires cause the drives to be moved from storage to the described location, the Defendant to bear the costs of same.
5. From failing or refusing to properly disconnect the computers components and parts (hardware) now in the possession of the Plaintiff, preparatory to the Plaintiff's move to new premises; such move now contemplated to take place on or about December 1, 1973.

In sum, Leasco challenges the injunctions on the grounds that enjoining the state court action in the Carolina suit and apparently prohibiting the institution of any state court action in the Datatron suit (1) have no legal basis under anti-trust law, specifically, 15 U.S. C.A. § 26, and are not valid under the legal standards governing the granting of preliminary injunctions; and (2) are prohibited by the anti-injunction statute, 28 U.S.C.A. § 2283.[4]

## 15 U.S.C.A. § 26 AND PRELIMINARY INJUNCTIONS

Injunctive relief is provided as a remedy by law in anti-trust suits, 15 U.S.C. A. § 26. This provision states:

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue."

The above statutory provision also incorporates the standards for issuing a preliminary injunction established by equity. These were set out by this Court in Canal Authority of State of Florida v.

6. From failing or refusing to properly connect and render operational the computers, parts components (hardware) after the Plaintiff has moved to its 'new' premises or quarters.

7. From refusing to deal with the Plaintiff or do other business pending the conclusion of the above styled litigation."

4. Of course, the injunction in the Datatron suit would not trample on the dictates of

Callaway, 489 F.2d 567, 572–573 (5th Cir. 1974):

". . . It [the district court] must exercise that discretion in light of what we have termed 'the four prerequisites for the extraordinary relief of preliminary injunction.' Allison v. Froehlke, 5 Cir. 1972, 470 F.2d 1123, 1126. The four prerequisites are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. DiGiorgio v. Causey, 5 Cir. 1973, 488 F.2d 527; Blackshear Residents Organization v. Romney, 5 Cir. 1973, 472 F.2d 1197."

Measured under these principles and the case law and implications flowing from the Supreme Court's decision in Bruce's Juices v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947), and Kelly v. Kosuga, 358 U.S. 516, 79 S. Ct. 429, 3 L.Ed.2d 475 (1959), we find that the district court's injunctions cannot stand, because there was no irreparable loss or damage caused by a violation of the federal anti-trust law.

The appellees' position, in which the district court concurred, is that the franchising and leasing agreements violate the anti-trust law and are invalid. Since Leasco is suing on these contracts in state court where there is no jurisdiction to grant the relief mandated by the anti-trust law, the district court enjoined the pending state court proceed-

section 2283 against enjoining state proceedings. The Supreme Court explained in Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), that section 2283, is not a bar to a federal injunction preventing the *institution* of state court proceedings, but only prohibits stays of *pending* suits. *See* Barancik v. Investors Funding Corp., 489 F.2d 933 (7th Cir. 1973).

ing against Carolina and the institution of a state court suit against Datatron, because irreparable injury would be accomplished by effectively terminating Carolina's and Datatron's businesses. There is, however, an erroneous assumption in appellees' and the district court's syllogism. The Supreme Court postulated in *Bruce's Juices* and *Kelly*, and lower courts developed the rule,[5] that the anti-trust laws on the theory asserted by appellees, void for illegality, provide no defense for actions under state law for collection of debts for sale of goods and services.

In *Bruce's Juices*, a suit filed in state court, the issue squarely presented to the Supreme Court was whether "notes representing the purchase price of goods sold and delivered are uncollectible if it is found that the vendor violated the Robinson-Patman Act." 330 U.S. at 744, 67 S.Ct. at 1015. The Supreme Court assumed that the anti-trust violations were established and held that Congress had not meant to provide the additional remedy requested of allowing "a buyer to get his goods for nothing because the seller violated the Act. . . ." 330 U.S. at 752, 67 S.Ct. at 1019. Likewise, in *Kelly* a similar effort to assert an anti-trust defense to a suit filed in federal court for debt on goods sold and delivered was attempted; the Supreme Court reaffirmed the *Bruce's Juices* holding:

> "As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court.
>
> \* \* \* \* \* \*
>
> "In any event, an analysis of the narrow scope in which the defense is allowed in respect of the Sherman Act

indicates that the principle of distinction is not what the petitioner claims it to be. The leading case here in which the defense was allowed is Continental Wallpaper Co. v. Lewis Voight & Sons Co., 212 U.S. 227, [29 S.Ct. 280] [53 L.Ed. 486,] much relied on by petitioner. There the Voight Company had made purchases from Continental, a corporation which existed only as a selling agent for numerous wallpaper companies doing business in a pool and selling at prices, alleged to be excessive and unreasonable, fixed through the pool agreement. The Court was of opinion that to give judgment for the excessive purchase price so fixed in favor of such a vendor would be to make the courts a party to the carrying out of one of the very restraints forbidden by the Sherman Act. 212 U.S. at 261, [29 S.Ct. 280]. . . . Past the point where the judgment of the Court would itself be enforcing this precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' Continental Wallpaper v. Lewis Voight & Sons Co., *supra*, at 271 [29 S.Ct. 280.] (dissenting opinion). Supplying a sanction for the violation of the Act, not in terms provided and capricious in its operation, *cf.* Bruce's Juices, Inc. v. American Can Co., *supra*, [330 U.S.] at 753–754, [67 S.Ct. 1015], is avoided by treating the defense as so confined." 358 U.S. at 518, 520–521, 79 S.Ct. at 431, 432.

█ Both *Bruce's Juices*[6] and *Kelly*[7] carve out an exception under Con-

---

5. Denison Mines, Ltd. v. Michigan Chemical Corp., 469 F.2d 1301, 1309 (7th Cir. 1972); El Salto, S.A. v. P.S.G. Co., 444 U.S. 477, 482–483 (9th Cir.), cert. denied, 404 U.S. 940, 92 S.Ct. 273, 30 L.Ed.2d 253 (1971); Dickstein v. DuPont, 443 F.2d 783, 785–787 (1st Cir. 1971); Sunshine Packers, Inc. v. American Can Co., 395 F.2d 86 (5th Cir. 1968); Lewis v. Seanor Coal Co., 382 F.2d 437, 441 (3rd Cir. 1967), cert. denied, 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968).

6. 330 U.S. at 754–755, 67 S.Ct. 1015.

7. 358 U.S. at 520–521, 79 S.Ct. 429.

tinental Wallpaper Co. v. Lewis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486 (1909), that when the conduct actually prohibited by the anti-trust act is sought to be enforced in a state court action, the anti-trust defense is a valid block.[8] In sum, where recovery in the state court proceeding (or a federal court proceeding) is premised on an obligation collateral to but independent of the agreement which violates the anti-trust law and where it is not necessary for the state court in granting relief to depend on or enforce the agreement violative of the anti-trust provisions, there is no illegality to bar the state suit.[9]

 Having discovered that appellees' theory cannot provide a defense to the state court action, unless the *Voight* exception is met, the question next becomes whether a preliminary injunction can issue under this theory of illegality.[10] We think not. Helfenbein v. International Industries, Inc., 438 F.2d 1068 (8th Cir. 1971); Red Rock Cola Co. v. Red Rock Bottlers, 195 F.2d 406 (5th Cir. 1952). *But cf.* Milsen Co. v. Southland Corp., *supra*, 454 F.2d 363. If the contract provisions sued on in the state court do not embody or further the anti-competitive practices, then there has been no irreparable loss or damage from a *violation of the anti-trust law.*

The *Helfenbein* case involves facts very similar to the present situation. There was a franchise agreement between the parties which provided for the subleasing of restaurants and equipment, just as here Leasco is leasing computer and related equipment to Carolina and Datatron. Upon default by the franchisees, the franchisor commenced eviction proceedings in state court. The franchisees then, just as in this case, filed anti-trust suits under the Sherman and Clayton Acts in .federal court against the franchisor (alleging illegal tying agreements) and sought a preliminary injunction from the federal court staying the state court eviction actions. Relying on *Bruce's Juices* and *Kelly*, the court found no loss or damage by a violation of the anti-trust laws as required by 15 U.S.C.A. § 26 and affirmed the denial of the injunctive relief.

There are two important reasons for narrowly construing, as the court did in *Helfenbein,* the plea of illegality under the anti-trust laws. First, as stressed heavily by the Supreme Court in *Bruce's Juices* and *Kelly,* the availability of such a defense allows contracting parties the benefits of a contract without having to tender consideration. In this case, Carolina and Datatron have accepted from Leasco the use of their computer hardware, their computer software, and their reputation and expertise, without payment. "The Court has refrained from extending judicial sanction to the avoidance of private contracts where to do so is unnecessary. *See* Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 751–757, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947); D. R. Wilder Manufacturing Co. v. Corn Products Refining Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520 (1915); Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679 (1902)." Dickstein v. DuPont, *supra,* 443 F.2d at 786.

---

8. *See* Milsen Co. v. Southland Corp., 454 F. 2d 363 (7th Cir. 1971); Sunshine Packers, Inc. v. American Can Co., *supra*, 395 F.2d 86; Farbenfabriken Bayer, A. G. v. Sterling Drug Co., 307 F.2d 207, 208–210 (3rd Cir. 1962).

9. The franchise agreement expressly provided for severability of any clause held to be invalid. Superior Bedding Co. v. Serta Associates, Inc., 353 F.Supp. 1143 (N.D.Ill. 1972). In *Kelly*, the Supreme Court found that the provision in the commodity sales contract, where the buyer and seller illegally agreed not to sell on the future's market, was separable from the contractual promise to pay for the commodities. 358 U.S. at 516–517, 521, 79 S.Ct. 429. *Cf.* Lewis v. Seanor Coal Co., *supra*, 382 F.2d 437.

10. The difference between prohibiting this defense as a total block to a state court suit as in *Bruce's Juices,* and, in this case, enjoining the state proceedings until the end of the federal action, is not sufficient to distinguish this situation. The injunction here was issued on the basis and reasoning which was rejected in *Bruce's Juices* and *Kelly.*

Second, the policy expressed in *Bruce's Juices* and applied in *Kelly* denoted that the enumerated statutory remedies in the anti-trust law do not provide for or require such a broad anti-trust defense to contract actions. To allow the appellees to obtain free goods and services from Leasco as a compensatory measure in the state court and, additionally, to award triple damages in the federal anti-trust suit would exceed the redress established by the anti-trust statute. 330 U.S. at 756–757, 67 S.Ct. 1015.[11]

Nor can the injunctions be upheld under the *Voight* exception. The substantial amounts owed Leasco by appellees[12] are not argued to be monies due from appellees under the 70% clause for selling outside their territories of primary responsibility (territorial restraint),[13] rather the record reflects that appellees terminated all payments. Neither the rentals on the leased computer hardware nor the maintenance costs nor the unchallenged 15% royalties were paid. The appellees contend that to dissolve the injunctions would allow Leasco to put them out of business. We note,

however, that this situation is not one of a franchisor terminating a franchisee because of its failure to comply with the practices violative of the anti-trust law,[14] nor that the alleged anti-trust violation so permeated the franchise agreement that to uphold any of its provisions would be to countenance and enforce an anti-trust violation.[15] Finally, the dictates of *Bruce's Juices* and *Kelly* were applied in *Helfenbein* even though it was clear that the effect there was to terminate the franchisee's business.

In addition, the principles of comity and federalism recognized by this Court in Red Rock Cola Co. v. Red Rock Bottlers, *supra*, 195 F.2d 406, and affirmed in American Radio Association v. Mobile Steamship Association, Inc., 483 F.2d 1, 6–7 (5th Cir. 1973), mitigate against unnecessarily interfering with pending state court proceedings.[16] *Red Rock* involved a question similar to the issue in this case, whether an injunction could issue under the anti-trust laws to enjoin a state court suit. This Court reversed the issuance of the preliminary injunctions on the grounds of federalism and comity.[17]

11. In other words, for any damage inflicted by Leasco on Carolina and Datatron which terminates their businesses, which Carolina and Datatron can demonstrate violates the anti-trust law, triple damages can be claimed in the anti-trust suit.

12. Approximately $86,000 is owed by Datatron and $267,406 by Carolina.

13. The record reveals that, at least from Datatron, Leasco never received the 70% of the sales receipts for business outside appellees primary area of responsibility. The record does not indicate whether in the state suit against Carolina, Leasco is claiming this 70%. In any event, we note that the Supreme Court in *Bruce's Juices* refused the illegality defense even though part of the money sought by the seller represented an illegal differential in the price of the goods. *See* Helfenbein v. International Industries, Inc., *supra*, 438 F.2d at 1071.

14. Sahm v. V–1 Oil Co., 402 F.2d 69 (10th Cir. 1968) ; Broussard v. Socony Mobil Oil Co., 350 F.2d 346 (5th Cir. 1965) ; Bergen Drug Co., Inc. v. Parke, Davis & Co., 307 F.2d 725 (3rd Cir. 1962) ; Bateman v. Ford Motor Co., 302 F.2d 63 (3rd Cir. 1962).

15. *See* Milsen Co. v. Southland Corp., *supra*, 454 F.2d 363.

16. The decision in Mitchum v. Foster, 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), indicated that the restraints of federalism and comity were still present even if an injunction fell within an exception to 28 U.S.C.A. § 2283. *See* note 16, *infra*.

17. Having determined that the injunctions are invalid under 15 U.S.C.A. § 26 and the principles governing the granting of injunctions, there is no necessity to reach the question of whether the anti-trust laws constitute an exception to the anti-injunction statute, 28 U.S.C.A. § 2283. Carolina had contended that the enjoining of the state court in North Carolina fell within the exception language in 28 U.S.C.A. § 2283, either as "necessary in aid of jurisdiction," Atlantic C. L. R. Co. v. Engineers, 398 U.S. 281, 294–296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), or as "expressly authorized by Act of Congress," Mitchum v. Foster, *supra*, 407 U.S. at 228, 92 S.Ct. at 2154 ; Jennings v. Boenning & Co., 482 F.2d 1128 (3rd Cir. 1970), cert. denied, 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973).

We conclude, therefore, that the judgment granting the preliminary injunctions must be set aside.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.