Jack D. ABERCROMBIE et al.,
Plaintiffs-Appellants,

v.

LUM'S, INC., et al.,
Defendants-Appellees.

No. 75–2517.

United States Court of Appeals,
Fifth Circuit.

May 17, 1976.

Phillip D. Bostwick, Mark Augenblick, Jay H. Bernstein, Washington, D. C., for plaintiffs-appellants.

Bernard S. Mandler, Miami Beach, Fla., for Lum's Inc., et al.

William R. Glendon, Thomas C. Morrison, New York City, for Caesars World, Inc.

Before THORNBERRY, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

The plaintiffs-appellants, Jack D. and Margaret Abercrombie and their eight franchisee corporations [1] (the Abercrombies) appeal from the order of the district court denying their motion for a preliminary and permanent injunction against the defendants-appellees, Lum's, Inc., and its wholly-owned subsidiaries (Lum's).[2]

The motion for injunctive relief grew out of a private antitrust action brought by the Abercrombies against Lum's alleging that the latter had violated Sections 1 and 2 of the Sherman Act, Title 15, U.S.C., Sections 1, 2, and Section 3 of the Clayton Act, Title 15, U.S.C., Section 14, by imposing tying arrangements through its franchise agreements.[3] Lum's and its various subsidiaries were organized to operate and to franchise fast food restaurants selling products under the trademarks and trade names "Lumdog" and "Lumberger". The Abercrombies entered into franchise agreements with Lum's and presently hold franchises for eight Lum's fast food restaurants in Florida. The gravamen of the Abercrombies' claim is that the Lum's franchise agreements imposed unlawful tying arrangements in violation of the antitrust laws because the franchisees were unlawfully obligated: (1) to purchase furniture, fixtures, foods, and beverages from either a Lum's subsidiary or an approved supplier, and on which Lum's received a rebate or a mark-up; (2) to purchase from a Lum's subsidiary signs and the "LUM'S equipment package"; (3) to provide two of their employees for on-the-job training with Lum's; (4) to permit Lum's to repurchase equipment and fixtures upon the termination of the franchise agreement; (5) to locate a site for their restaurants, and if owned by the franchisee to lease the site to Lum's or if owned by a third party to arrange for Lum's to lease the site; Lum's would then sublease the site to the franchisee at the same fixed rental and taxes paid by Lum's plus 5% of the franchisee's monthly gross sales.

Beginning in 1970 the Abercrombies ceased paying the 5% rental fee to Lum's, and filed this suit on July 17, 1970. Under the terms of the franchise agreement any breach of that agreement, including the nonpayment of the 5% gross sales payments or the fixed rents, is considered a breach of the sublease and is grounds for termination of and eviction from the franchise. In October 1972, Lum's Dade City 294 Corporation (Lum's Dade City), the successor to various Lum's subsidiaries and the entity to which the 5% payments were owed, sued in a Florida state court to recover the 5% payments owed by the Abercrombies under the franchise agreements and the subleases. Lum's Dade City was not a party to the

1. The Abercrombies hold franchises for eight Lum's restaurants located in Florida. The corporations operating those restaurants and plaintiffs-appellants herein are: Javin Corporation; Jerimar, Inc.; Galmar of Duval, Inc.; Marlo of Brevard, Inc.; Panamar, Inc.; Halmar of Pensacola, Inc.; Marimar of Leon, Inc.; Don Mar, Inc. Involuntary plaintiffs are Penn Daw Lumco, Inc., and Courthouse Lumco, Inc., which the Abercrombies claim to own in Northern Virginia. Plaintiff-appellant Westmar of Duval, Inc., is a restaurant corporation which Lum's bought back from the Abercrombies.

2. The defendants-appellees are Lum's, Inc., its wholly-owned subsidiaries Lum's Restaurant Corp.; Franchise Restaurant Equipment Company; Siteco, Inc.; Dirr's Gold Seal Meats, Inc.; and Lum's Dade City 294 Corporation, and the exclusive sales agents selling franchises for Lum's restaurants, E. C. K. Chivers & Associates, Inc.

Subsequent to the commencement of this action Lum's, Inc. sold its interests in the fast-food restaurant business and changed its name to Caesars World. However, Lum's, Inc., now Caesars World, remains liable for the antitrust violations alleged in the appellants' complaint.

3. This action was originally brought as a class action in the Eastern District of Virginia, and that court made an initial determination that the case could proceed as a class action. Subsequently, upon the defendants' motion the case was transferred to the court below pursuant to Title 28, U.S.C., Section 1404(a). The district court, per Judge King, held that the action was not properly maintainable as a class action, and granted Lum's motion to strike the class action allegations. *Abercrombie v. Lum's, Inc.,* S.D.Fla.1972, 345 F.Supp. 387.

antitrust action when the state court action was commenced, but was added as a defendant to the antitrust suit May 14, 1974. After several continuances of the state court action the state trial judge on May 21, 1975, set the case for trial on June 23, 1975.

The Abercrombies on June 2, 1975, filed their motion in the district court for preliminary and permanent injunctions as follows:

"1. Enjoining and restraining defendants LUM'S Dade City 294 CORP., LUM'S, INC. and LUM'S RESTAURANT CORPORATION, their officers, employees and agents, and all others in concert or participation with said defendants (hereinafter 'the defendants'), from any further attempt to collect 5% of gross sales franchise fees or rentals from plaintiffs pursuant to their franchise agreements or subleases with the defendants pending the determination of plaintiffs' antitrust claims against defendants in Civil Action No. 71–602–NCR;

2. Enjoining and restraining the defendants from any attempts to evict plaintiffs or to take any other action pursuant to plaintiffs' subleases or franchise agreements with defendants pending the determination of plaintiffs' antitrust claims against defendants in Civil Action No. 71–602–NCR;

3. Ordering the defendants to file a counterclaim in Civil Action No. 71–602–NCR to recover all 5% of gross sales franchise fees or rentals claimed to be due and owing from plaintiffs upon the stipulation of plaintiffs that they will not oppose the filing of said counterclaim on the grounds of timeliness;

4. Ordering LUM'S DADE CITY 294 CORP. to file a Stipulation of Dismissal without prejudice on or before June 11, 1975 with no costs to either party dismissing the presently pending State Court action against plaintiffs herein entitled 'Lum's Dade City 294 Corp. v. Jack D. Abercrombie and Margaret A. Abercrombie, et al.', Eleventh Judicial Circuit In And For Dade County, Florida, Case No. 72–21605; and

5. Enjoining and restraining the defendants from any further prosecution of said State Court action as of the date of this Court's ORDER."

In an affidavit filed by the Abercrombies' counsel in support of the motion it was alleged that the Abercrombies were current in all their fixed rents and tax payments. Accompanying the motion and the affidavit was a letter from appellants' counsel to the district judge requesting that the motion be ruled on by June 6, 1975. The district court on June 9, 1975, entered an order denying the Abercrombies' motion for injunctive relief. In a memorandum opinion the court found that the appellants offered no justification for waiting over two years before seeking to enjoin the state proceeding, and noted that any judgment entered in the state court action would in no way be binding upon the district court on the issue of the validity of the franchise agreements under the federal antitrust laws. Finally, the district court held that the Abercrombies had failed to satisfy the standard in this circuit for the issuance of a preliminary injunction. The Abercrombies' present appeal is from the district court's denial of their motion for a preliminary and permanent injunction.

During the pendency of this appeal, the trial of the state court action for collection of the 5% gross sales payments was rescheduled to commence on July 28, 1975. On that date an *in camera* hearing before the state court judge and counsel for Lum's and the Abercrombies resulted in a stipulation and agreed order dated July 30, 1975, signed by counsel and the court. The stipulation and order provide that judgment is to be entered for Lum's Dade City on the 5% gross sales payments which shall continue to accrue until a final determination of the action, and execution on the judgment and any accruals is stayed until a final determination of the antitrust action in the court below. Further, the stipulation provides that if the district court does not make a final determination as to the validity of the 5% payments under the antitrust laws that the Abercrombies will be permitted to re-

turn to state court to defend and counter-claim against Lum's Dade City's claim for the 5% payments.[4]

The appellants concede in this court that the effect of the state court order entering judgment for Lum's Dade City on the 5% gross sales fees renders moot the relief requested in paragraphs four and five of their motion for preliminary injunctive relief. They contend, however, that the state court order has no effect on the relief requested in paragraphs one, two, and three of their motion, and that the court below erred in denying the relief requested in those paragraphs. Hence, the Abercrombies seek a preliminary injunction under the Clayton Act, Title 15, U.S.C., Section 26, enjoining the appellees from further attempts to collect the payments of 5% of gross sales and from evicting the appellants for failure to make the 5% payments or the fixed rental payments during the pendency of this litigation, and an order requiring the appellees to file a counterclaim in the district court to recover any amounts claimed to be due under the subleases. In support of their request for injunctive relief the Abercrombies allege that because of their failure to pay the fixed rents for September, October, and November on certain of their restaurant franchises Lum's has notified them that unless payment is forthcoming it will pursue its remedies under the subleases and the Statutes of Florida.

As a starting point for discussion of whether the appellants have satisfied the prerequisites for preliminary injunctive relief it is relevant to consider the following: (i) that no suits are pending by Lum's against the Abercrombies under the franchise agreements or the subleases; (ii) that the complaint alleges no breach of the franchising and leasing agreements by the appellants other than their nonpayment of the 5% of gross sales and fixed rentals; (iii) that Lum's has not attempted to terminate

the Abercrombies' franchises; and (iv) that Lum's has at no time since the commencement of this lawsuit attempted to evict the appellants from their franchise restaurant premises for nonpayment of the 5% rentals, although it has threatened to do so with regard to their nonpayment of the fixed rentals.

■ In light of the stipulation and order entered in the state court action we reject the Abercrombies' contention that injunctive relief restraining Lum's from "any further attempts to collect 5% of gross sales franchise fees" pending a determination of the antitrust claims is necessary to prevent their "economic demise". Despite its right to evict the appellants from the leased premises or to terminate the franchises under the agreements and the subleases because of the nonpayment of the gross sales percentages, Lum's elected instead to institute the suit in the state court for recovery of the amounts due, and that court has now by agreement of the parties entered an accruing judgment for Lum's. Under the state court order Lum's is prohibited from enforcing the judgment for the 5% of gross sales rentals "until there has been a final determination" of the antitrust suit. Lum's has not, either prior to or since the state court order, threatened or attempted to evict the Abercrombies from their restaurant premises because of their nonpayment of the 5% rentals. In these circumstances an injunction restraining Lum's from any further attempts to collect the 5% of gross sales rentals would be unnecessary and entirely superfluous.

■ The Abercrombies' claim to be entitled to an injunction against any attempts by Lum's to collect the fixed rentals also lacks merit. The Abercrombies have failed to show, as required by Section 16 of the Clayton Act, Title 15, U.S.C., Section 26,[5]

---

4. The stipulation and order also provide that judgment be entered for Lum's on two security deposits not paid by the Abercrombies on two franchises.

5. Section 16 of the Clayton Act provides in part:

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties,

that any causal connection exists between the antitrust violations alleged in the complaint and the payment of the fixed rentals. See *Response of Carolina v. Leasco Response, Inc.,* 5 Cir. 1974, 498 F.2d 314, 319, cert. denied 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645; *Helfenbein v. International Industries, Inc.,* 8 Cir. 1971, 438 F.2d 1068, cert. denied 404 U.S. 872, 92 S.Ct. 63, 30 L.Ed.2d 115. Here, unlike *Milsen Co. v. Southland Co.,* 7 Cir. 1971, 454 F.2d 363, on which the appellants rely, there is no proof that the fixed rentals are themselves a part of the techniques used to enforce the alleged illegal tie-in.[6] As Judge Tuttle writing for this court in *Response of Carolina v. Leasco Response, Inc., supra,* noted:

> "If the contract provisions [sought to be enforced] do not embody or further the anti-competitive practices, then there has been no irreparable loss or damage from a *violation of the anti-trust law.*"

498 F.2d at 319 (emphasis in original). It is undisputed that the Abercrombies have used the restaurant premises leased to them by Lum's, and since to allow Lum's to enforce the provision of the subleases and franchise agreements requiring the payment of the fixed rentals would not be enforcing the precise conduct made unlawful by the antitrust laws those laws provide no basis for enjoining the collection of the fixed rentals. See *Kelly v. Kosuga,* 1959, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475; *Bruce's Juices, Inc. v. American Can Co.,* 1947, 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219.

We turn lastly to the Abercrombies' assertion that Lum's Dade City should be ordered to file a compulsory counterclaim in the district court "to recover all 5% of gross sales franchise fees or rentals claimed to be due and owing". As noted in the introductory portion of this opinion, the record shows that in October 1972, when Lum's Dade City, the entity to which the 5% fees are owed, commenced the state suit, it was not a party to the antitrust litigation and was not added as a defendant until May 14, 1974. The claim for the 5% rentals hence was not a compulsory counterclaim in the federal action at the time the state suit was commenced. F.R.Civ.P. 13(a). In addition, the stipulation and order in the state court are not binding upon the district court on the issue of the validity of the franchise agreements under the antitrust laws. The state court order specifically provides that, in the event the district court in the antitrust action does not make a final determination as to the validity of the 5% rentals, then the Abercrombies have the right to return to state court to defend against Lum's Dade City's claims for the 5% fees. Thus, no reason exists for requiring Lum's Dade City to file a permissive counterclaim in the district court.

The order appealed from is in all respects AFFIRMED.

---

against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of a proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue. . . ."
Title 15, U.S.C., Section 26.

**6.** The Seventh Circuit in *Milsen Co. v. Southland Co.,* 7 Cir. 1971, 454 F.2d, 367, 369, required the franchisee therein to keep rent payments current as a condition for continuing its franchises.