Anthony R. ZIEGLER, Collection Agent of the National Electrical Industry Fund, Plaintiff,

v.

The HOWARD P. FOLEY COMPANY, Defendant.

Civ. A. No. 78–2054.

United States District Court, E. D. Louisiana.

March 15, 1979.

Paul V. Cassisa, Metairie, La., Farmer, Shibley, McGuinn & Flood, Washington, D. C., for plaintiff.

Walter B. Stuart, IV, New Orleans, La., for defendant.

CASSIBRY, District Judge:

The National Electrical Industry Fund (the Fund) is a trust created pursuant to a national agreement between the National Electric Contractors Association (NECA), an employers trade association, and the International Brotherhood of Electrical Workers (IBEW). That agreement also provides for the revision or amendment of all local labor agreements between NECA and IBEW affiliates to require monthly payments to the Fund by all NECA members, beginning on July 1, 1977. The labor agreement between the local NECA and IBEW affiliates was so revised. In the action currently before the court, Anthony Ziegler, collection agent for the Trustees of the Fund, complains that The Howard P. Foley Co. (Foley) has failed to make payments to the Fund as required by this local agreement. Ziegler initially sued in state court on June 1, 1978, and the case was subsequently removed here.

On August 5, 1977, Foley, along with eighteen other named plaintiffs, filed suit in the United States District Court for the District of Maryland against, *inter alia,* NECA, IBEW, and the Trustees of the Fund. The Maryland plaintiffs allege that defendants' concerted efforts to elicit payments to the Fund throughout the country have violated the federal antitrust laws. NECA and the Trustees have filed an extensive counterclaim.

Foley and seven other electrical contractors have also filed charges of unfair labor practices with the National Labor Relations Board (NLRB), claiming that various IBEW locals, in attempting to coerce payments to the Fund, have engaged in illegal conduct.

Several motions are currently before this court. The plaintiff asks that the action be remanded to the state court. The defendant requests that the case be stayed pending the outcome of the Maryland action and/or the NLRB proceeding. Alternatively, the defendant seeks transfer of the case to Maryland for consolidation with the action there.

*Plaintiff's motion to remand*

 Removal of this case was grounded upon the federal question jurisdiction of this court. Under 28 U.S.C. § 1441(a) and (b), such removal is proper only if the plaintiff's claim is one "arising under" the Constitution, treaties, or laws of the United States. That is, a federal claim must be an essential element of plaintiff's suit. *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). A plaintiff may draft his compliant in such a way as to avoid stating a federal claim, but if the allegations apparent on the face of the complaint make out a claim arising under federal law, removal is proper, even if plaintiff never expressly refers to federal law. *Jones v. General Tire and Rubber Co.,* 541 F.2d 660, 664 (5th Cir. 1976); *Talbot v. National Super Markets of Louisiana,* 372 F.Supp. 1050 (E.D.La.1974).

Defendant argues that the plaintiff's complaint states a claim under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). That provision reads:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Plaintiff counters that his suit is a simple collection matter, based on state contract

law, between two "management" interests. He argues that the "national labor policy" embodied in 29 U.S.C. § 185(a) is not implicated in this suit, for there is no labor-management antagonism between the parties.

█ The complaint clearly states a claim under § 185(a). At its heart are allegations that defendant has breached its obligation under a collective bargaining agreement between the South Louisiana Chapter of NECA and Local Union No. 130 of IBEW to make payments to the Fund. Such a claim of an alleged breach of a collective bargaining agreement is precisely what § 185(a) is meant to cover. *See Smith v. Evening News Assoc.,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 505, 509, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962). Suits to compel payment to a trust fund under a collective bargaining agreement state a claim under § 185(a). *Calhoun v. Bernard,* 333 F.2d 739 (9th Cir. 1964); *Trustees of the Colorado Pipe Industry Employee Benefit Funds v. Colorado Springs Plumbing and Heating Co.,* 388 F.Supp. 71 (E.D.Colo. 1975); *Hann v. Harlow,* 271 F.Supp. 674 (D.Or.1967); *Local 641, Amalgamated Butcher Workmen v. Capitol Packing Co.,* 32 F.R.D. 4 (D.Colo.1963).

The Fund itself is the creation of a nationwide agreement between an employer association, NECA, and a labor union, IBEW. The stated purposes of the Fund include activities benefitting both labor and management, and both of these interests have an interest in its continued existence and vitality. The Trustees thus cannot be said to be an "employer association." Rather, they (through their agent Ziegler) may properly bring a claim under § 185(a). *Calhoun v. Bernard, supra; Trustees of the Colorado Pipe Industry Employee Benefit Funds v. Colorado Springs Plumbing and Heating Co., supra; Hann v. Harlow, supra.*

Accordingly, the action was properly removed. The motion to remand is DENIED.

### Defendant's motion to stay

The pending NLRB proceeding

█ One ground for defendant's motion to stay is that the IBEW's efforts to secure contributions to the Fund by Foley and others is the subject of unfair labor practice charges now pending before the National Labor Relations Board. However, concurrent actions before the NLRB and a federal court under 29 U.S.C. § 185(a) are entirely proper, *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 1062 n.8, 51 L.Ed.2d 338 (1977); *Smith v. Evening News Assoc.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), and the defendant has not pointed out any specific reason for a stay in this particular case. *See Johnson v. H. P. Foley Co.,* Civ. Action No. 78–785 (E.D.Pa., November 9, 1978) (unpublished memorandum decision).

The pending federal action in Maryland

█ Defendant urges that the existence of the Maryland action should incline this court to stay the instant case for two related reasons. First, Foley argues that the Maryland action may resolve issues dispositive of the controversy presented by the instant case. That is, if the Maryland court grants all the relief requested by either the plaintiffs or the defendants (in their counterclaim), the instant action will be rendered unnecessary. Second, Foley argues that it will raise as a defense in the instant case the same antitrust issues that are being and will continue to be litigated in Maryland, thus creating a duplication of judicial effort if both cases proceed simultaneously. I find the first argument persuasive and stay the case on that basis. I made no decision at all on the second point.[1]

---

1. The defendant would not be allowed to raise antitrust claims as a defense unless this case were to fall into that narrow group of cases where a judgment in plaintiff's favor would be "enforcing the precise conduct made unlawful" by the antitrust laws. *Kelly v. Kosuga,* 358

U.S. 516, 520, 79 S.Ct. 429, 432, 3 L.Ed.2d 475 (1959). *Accord Response of Carolina v. Leasco Response, Inc.,* 498 F.2d 314, 319 (5th Cir. 1974). In the context of labor-related litigation, in *Lewis v. Seanor Coal Co.,* 382 F.2d 437 (3d Cir. 1967), an employer was not allowed to

In the Maryland action, the plaintiffs challenge the legality of the Fund itself and the legality of the Trustees' efforts to obtain contributions to the Fund from certain contractors, including Foley. Among other things, they have prayed (1) that the language of the national agreement that provides for the Fund and the language of the trust document that actually creates the Fund be "adjudged and decreed to be null, void and unenforceable," and (2) that the Trustees of the Fund be enjoined from demanding or receiving contributions to the Fund from the plaintiffs. The Trustees of the Fund strenuously oppose the plaintiffs on these points.

In the instant action, a collection agent from these same Trustees is trying to collect contributions to this same Fund. If the Maryland court were to uphold the plaintiffs' broad claims and grant the relief they seek before a decision is reached in the instant case, such a decision would be unnecessary. Indeed, if that relief were granted after this court granted a judgment in favor of Ziegler, the judgment might be open to serious question. Accordingly, it seems advisable to stay the instant case pending the resolution of the controlling issues raised in the Maryland action. *See Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *ACF Industries, Inc. v. Guinn,* 384 F.2d 15 (5th Cir. 1967).

An additional factor inclines me to stay this case. NECA and the Trustees of the Fund have filed a counterclaim in the Maryland action that includes, as the "Third Counterclaim," a claim that Foley and the other Maryland plaintiffs have "breached contracts and the terms of letters of assent pursuant to which they have agreed to make payments to the National Electrical Industry Fund." In the instant case, Ziegler accuses Foley of such a breach. Thus, the specific claim made in the instant action could be brought by the Trustees in Maryland as part of their third Counterclaim. If NECA and the Trustees are successful in urging this claim, the Maryland court might well award them the same relief sought in the instant action. The relief prayed for under the "Third Counterclaim" includes punitive and compensatory damages, plus an injunction against the plaintiffs' breaching their agreements.

Accordingly, the motion to stay is GRANTED and it is ordered that this action be stayed pending entry of final judgment in the action now pending before the United States District Court for the District of Maryland, entitled *National Constructors Association, et al. v. National Electrical Contractors.Association, Inc., et al.,* Civ. No. 77–1302.

*Defendant's motion to transfer*

■ ' Except for the broad issues concerning the legality of the Fund and the Trustees' efforts to collect contributions to it, the controversy between Ziegler and Foley is essentially local to this area. Ziegler claims that Foley breached a local labor agreement. The damages he seeks are calculated according to Foley's local payroll. An important defense to be raised by Foley is that it withdrew timely from the local chapter of NECA and thus is not bound by the labor agreement. Accordingly, local witnesses and documents will be at the heart of the trial, and I consider transfer under 28 U.S.C. § 1404(a) to be unwarranted. *See Johnson v. H. P. Foley Co., supra.*

It may be that the Trustees and NECA will, under the ambit of the Third Counterclaim, litigate in Maryland the question of Foley's breach of the labor agreement involved in the instant case. However, this matter is of a sufficiently local nature that I do not consider it appropriate to force them to do so. The motion to transfer is DENIED.

---

defend an action seeking royalty payments to a union pension fund by asserting antitrust violations on the part of the union. However, in an action in California extremely similar to the instant case, a suit seeking contributions to the Fund by Foley was stayed, the court finding that Foley would be allowed to raise antitrust issues as a defense. *Carlson v. The Howard P. Foley Co.,* Civ.No. 78–0831 (with consolidated cases) (C.D.Cal., November 27, 1978) (unpublished memorandum of decision).