**McDONALD'S CORPORATION, a Delaware Corporation, Plaintiff,**

v.

**ROBERT A. MAKIN, INC., a New York corporation; Robert A. Makin, and Carol Makin, Defendants.**

**Civ. A. No. 86–358C.**

United States District Court, W.D. New York.

Dec. 10, 1986.

Order Dec. 11, 1986.

Sonnenschein, Carlin, Nath & Rosenthal (Alan H. Silberman, of counsel), Chicago, Ill., and Davis, Nesper & McElvein (Gabriel J. Ferber, of counsel), Buffalo, N.Y., for plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear (Victor T. Fuzak, and Robert W. Keller, of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

Plaintiff McDonald's Corporation [McDonald's] is a Delaware corporation engaged in the business of developing and franchising restaurants. On November 22, 1971, McDonald's entered into an agreement with Robert A. Makin to franchise a restaurant at 4987 North Transit Road, Clarence, New York. Robert A. Makin, Inc., and Carol Makin subsequently became parties to the agreement through an assignment and an amendment, respectively. Jurisdiction over this action is conferred on this court by 28 U.S.C. § 1332.

The franchise agreement between the defendants and the plaintiff provides, *inter alia,* for monthly payments to be made by the defendants to the plaintiff (Item 1, Exh. A–2, ¶ 12, Exh. A–3, Art. III, § 2), and provides for termination of the license at plaintiff's option if "Licensee defaults in the payment of any indebtedness to Licensor" (Item 1, Exh. A–2, ¶ 16, Exh. A–3, Art. XI, XIV).

Plaintiff presently moves for summary judgment on its first and third causes of action. The first cause of action alleges breach of contract by the defendants [Makins] and seeks a declaration that the franchise contract is terminated and a determination of the rights and obligations of the parties upon said termination. The third cause of action seeks recovery of amounts owed to plaintiff by defendants pursuant to the franchise contract.

I. *Plaintiff's Motion for Summary Judgment on the Third Cause of Action*

Pursuant to the agreement entered into in 1971, the Makins are required to pay to McDonald's, as license and lease fees, a

percentage of gross sales of the franchised restaurant. Since October, 1985, the Makins have failed to pay amounts due to McDonald's under the franchise agreement (Item 1, Exhs. A–2 and A–3). As of the end of January, 1986, the amount due and unpaid is $40,129.48. On four occasions, through January, 1986, McDonald's sent notices to the Makins advising them of their obligations and demanding payment (Item 6, ¶ 8 and Exhs. 1–4). In addition, Ross H. Stoltz, McDonald's Field Service Manager for the Makins' region, had discussions on January 29, 1986, and February 5, 1986, with Carol Makin, in which he advised her of the serious nature of the defaults and demanded payment (Item 6, Stoltz Affidavit). However, the Makins still failed to make any payments.

Accordingly, plaintiff seeks to recover judgment jointly and severally against each defendant for $40,129.48 and for additional amounts to be computed upon examination of defendants' books and records, plus interest as provided in the franchise contract (Item 1, Exh. A–2, ¶ 12). Plaintiff also seeks costs· and expenses of litigation, including attorney's fees as provided in the contract, with interest at the legal rate.

Defendants freely admit that, beginning in October, 1985, they have refused to make monthly payments to plaintiff as required under the franchise agreement (Item 19, ¶ 6). They contend, however, that such payments are not due and owing for the reasons set forth in the amended answer. These reasons consist of various alleged breaches of contract by the plaintiff which are set forth as "affirmative defenses and counterclaims." Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment contains four points specifically alleging acts by the plaintiff said to constitute an illegal combination in restraint of trade, discrimination among franchisees in violation of Illinois law, breach of a contractual duty not to deprive defendants of the benefits of the franchise contract, and tortious interference with defendants' pre-contractual relations.

Plaintiff argues, in response, that none of defendants' four affirmative defenses or counterclaims excuses their admitted failure to pay franchise fees. Defendants cannot, plaintiff argues, at once suspend franchise payments and continue possession and operation of the franchise property. I agree.

The franchise agreement obligates the defendants to pay monthly fees to plaintiff for the franchise. Nowhere do the defendants deny their failure to pay these fees since October, 1985. Yet, defendants have maintained possession and operation of the franchise property. At oral argument, counsel for defendants contended that McDonald's conduct, as alleged by defendants' "affirmative defenses and counterclaims" above, caused defendants' inability to make the payments. Defendants' counterclaims do not allege that McDonald's conduct caused the non-payment; moreover, defendants contend that most of McDonald's alleged illegal conduct began 7–14 years ago, over which time defendants regularly made the monthly fee payments (Item 19, ¶¶ 26, 28, 30, 33, and 36—alleging illegal conduct by plaintiff beginning in 1972–79). In any event, it should be clear to all concerned that

> it is against the law as well as sound morals to permit a party to a contract to repudiate the contract or his obligation under it, and at the same time retain the consideration that he has received.

*Maguire v. Campagnoli and Co.*, 17 N.Y. S.2d 129, 131–32 (Sup.Ct.1939); *see also Stauss v. Title Guarantee and Trust Co.*, 284 N.Y. 41, 29 N.E.2d 462 (1940); *E.T.C. Corp. v. Title Guarantee and Trust Co.*, 271 N.Y. 124, 2 N.E.2d 284 (1936).

Defendants' counterclaims will, of course, be adjudicated in their own right; however, the alleged wrongs of plaintiff do not constitute affirmative defenses to defendants' non-payment of franchise fees. The defendants may not use their counterclaims to avoid judgment for the amounts already due under the franchise agreement. *See Petroleo Brasileiro, S.A., Petrobras v. Ameropan Oil Corp.*, 372

F.Supp. 503, 507 (E.D.N.Y.1974). The failure of defendants to pay the monthly franchise fees is a breach of contract as to which there exists no genuine factual issue.

Accordingly, plaintiff's motion for summary judgment on Count III of the complaint is granted.

II. *Plaintiff's Motion for Summary Judgment on the First Cause of Action*

■ On February 7, 1986, McDonald's exercised its right to terminate the agreement for operation of the franchise in question. McDonald's designated 5 p.m. on February 10, 1986, as the time for turnover of the restaurant premises. Despite the attempted termination, the Makins have refused to terminate operations and have refused to surrender the premises.

Plaintiff seeks a determination that defendants' failure to pay the amounts owed constitutes a breach of contract and seek a declaration that the franchise contract is terminated pursuant to paragraph 16 of the Licensing Agreement and Article XI of the Lease Agreement as of 5 p.m. on February 10, 1986. They ask the court to declare the rights and obligations of the parties upon termination and to award costs and attorneys' fees, with interest at the legal rate.

Defendants argue that McDonald's engages in a coercive pricing policy, that the franchise agreement was terminated by plaintiff because of defendants' higher prices, and that the termination of the franchise was therefore unlawful. In addition to this Sherman Anti-Trust Act claim, defendants assert the other three counterclaims listed above. Plaintiff, on the other hand, argues that nothing alleged by the defendants would entitle it to legally "stay and not pay."

It is clear that defendants' allegations of discrimination among franchisees, breach of a contractual duty not to deprive defendants of the benefits of the franchise contract, and tortious interference with defendants' pre-contractual relations are separate, unrelated claims which, even if proven, would not bar summary judgment on this cause of action.

Nor will defendants' antitrust claim bar summary judgment with respect to the validity of the termination. In *Lewis v. Seanor Coal Company,* the United States Court of Appeals for the Third Circuit found that:

[t]he company's claim that the agreement violates the Sherman Anti-Trust Act is not a defense to the trustees' action. It is now well established that the remedy for violation of the antitrust law is not avoidance of payments due under a contract, but rather the redress which the antitrust statute establishes, —a private treble damage action.

382 F.2d 437, 441 (3d Cir.1967), *cert. denied,* 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968). In *Kelly v. Kosuga,* however, the Supreme Court recognized an exception to this general rule "where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act." 358 U.S. 516, 520, 79 S.Ct. 429, 432, 3 L.Ed.2d 475 (1958). Past that point, however, "the courts are to be guided by the overriding general policy ... 'of preventing people from getting other people's property for nothing when they purport to be buying it.'" *Id.* at 520–21, 79 S.Ct. at 432 (*quoting Continental Wall Paper Co. v. Louis Voight & Sons Co.,* 212 U.S. 227, 271, 29 S.Ct. 280, 296, 53 L.Ed.2d 486 (1909) (Holmes, J., dissenting)).

In *Kelly,* the court enforced an obligation to pay for 50 cars of onions purchased and delivered, notwithstanding the claim that the seller was also engaging in an antitrust violation involving alleged restraint of the market for onions. The court found that to enforce this contract would not be to enforce "the precise conduct made unlawful" by the Sherman Anti-Trust Act. 358 U.S. at 520, 79 S.Ct. at 432. The *Lewis* court applied a similar narrow construction of the exception. *Lewis* involved an agreement by an employer to make certain royalty payments to union retirement

funds. The court held that even if the agreement violated the Sherman Anti-Trust Act, that violation would not be a defense to an action, brought by the union, for royalties under the contract. The court found that the "precise conduct" exception was

> of no avail to the company, for it is directed to cases where the contract price itself has been inflated because of unlawful price fixing, whereas here there is involved a contract valid on its face and the fact that it provided the occasion for a restrictive agreement does not require that it should itself be invalidated.

382 F.2d at 441.

In *Viacom International, Inc. v. Tandem Productions, Inc.*, 526 F.2d 593 (2d Cir.1975), the Second Circuit also applied a narrow construction of the exception recognized in *Kelly*. The court required the defendant to pursue its antitrust remedies in a separate action, and observed that:

> [t]he *Kelly* decision followed a series of opinions in which the Supreme Court had expressed antipathy towards the interpretation of antitrust defenses in contract actions.

526 F.2d 593 at 597 (citation omitted). The court explained that:

> the overriding consideration which has persuaded the Supreme Court is its concern that the successful interposition of antitrust defenses is too likely to enrich parties who reap the benefits of a contract and then seek to avoid the corresponding burdens.

526 F.2d at 599.

Finally, in *National Souvenir Center v. Historic Figures, Inc.*, it was held that claims of Sherman Act violations were not defenses to claims for overdue franchise fees because, *inter alia*, the agreements to make the payments did not appear on their face to be the primary means to enforce the violations. 728 F.2d 503, 514–15 (D.C. Cir.1984); *cert. denied*, 469 U.S. 825, 105 S.Ct. 103, 83 L.Ed.2d 48. The promises to pay franchise fees were not found to be primarily means to enforce illegal activity. There, as here, they "appear[ed] rather to be a consideration for goods and services, to be paid on an installment basis." 728 F.2d at 515.

Defendants have not alleged that the requirement that they pay fees for the use of the franchise is at all connected with the illegal price-fixing allegedly engaged in by McDonald's. The termination is a clear contractual result of the failure to pay the required fees. Thus, defendants' antitrust claim does not preclude summary judgment on this action.

It is hornbook law that when a breach of contract occurs, the injured party may *either* retain the benefits and obligations of the contract and sue for damages *or* declare the contract terminated and perform no further. The defendants in this action did neither. It is clear under basic contract principles that, absent an affirmative defense excusing the defendants' failure to pay, the Makins cannot refuse to meet their obligations under the contract while enjoying all of its benefits. Upon the Makins' refusal to pay the amounts owed, McDonald's had a clear contractual right to terminate the franchise agreement.

Accordingly, plaintiff's motion for summary judgment on Count I of the complaint is granted.

I find that the franchise contract, consisting of the license and lease documents referenced herein, has been lawfully terminated as of February 10, 1986. In accordance with the provisions of the agreement, McDonald's has an immediate right to enter and take possession of the North Transit Road McDonald's and to require defendants to forthwith return all material containing McDonald's trade secrets, operating instructions, or business practices and to discontinue the use of the McDonald's System. In accordance with the provisions of the contract (Exh. A–2, ¶ 16; Exh. A–3, Art. X), McDonald's is also awarded the reasonable expenses of litigation in this

action, including attorney's fees, with interest thereon at the legal rate.

So ordered.

## ORDER

Upon a hearing attended by counsel for the parties on December 11, 1986, it is

ORDERED, that defendants shall cease business operations of the McDonald's Restaurant which is the subject of this proceeding and surrender possession of such restaurant to plaintiff as of 10:30 a.m. on December 11, 1986. Plaintiff shall have an immediate right to enter and take possession at such time, and it is further

ORDERED, that upon transfer of possession and during the process of inventory, defendants shall have reasonable access to the restaurant premises between the hours of 9:00 a.m. and 5:00 p.m. on weekdays and as otherwise agreed between the parties for the purposes of removing cash, subsequent to a subsequent accounting, personal items other than equipment, and food products not purchased from distributors which are approved by McDonalds, and it is further

ORDERED, that the parties shall cooperate in preparing an inventory of all remaining supplies, remaining equipment and fixtures. McDonald's responsibility with respect to such supplies, equipment and fixtures, shall be as provided in the contract documents between the parties, and it is further

ORDERED, that business records belonging to Robert Makin and relating to sales may be removed subject to McDonald's right to subsequently inspect such records and, for purposes of such inspection, the business records shall be retained by defendants' counsel or accountant, and it is further

ORDERED, that the parties should make every effort to complete the transfer of possession and inventory process by Monday, December 15, 1986 or Tuesday, December 16, 1986, at the latest.

The Court expects all counsel and all parties to cooperate in a business like manner to achieve the purposes of this order.